The State, ex rel. Geyer, *v.* Griffin, Aud.

(No. 917—Decided July 11, 1946.)

*Mr. D. Curtis Reed,* for relator.

*Mr. Paul T. Landis,* prosecuting attorney, for respondent.

By the Court. This is an action in mandamus brought by the state of Ohio on the relation of Albert M. Geyer, against Floyd B. Griffin, auditor of Allen county, Ohio, in which the relator seeks a writ of mandamus commanding the officer to issue, execute and deliver to the relator a warrant upon the treasurer of Allen county, Ohio, for the sum of $945 (less salary deductions required by law) claimed to be due to him for services performed by him as deputy sheriff of the county from January 1, 1946, to May 15, 1946, and to continue to issue semi-monthly warrants to the

relator, pursuant to the certificates therefor received from the sheriff of the county for compensation to the relator for services performed by him as deputy sheriff from May 15, 1946.

From the admissions in the pleadings, and the evidence, we find the facts to be as follows:

Floyd B. Griffin is, and was at all the times hereinafter mentioned, the duly elected, qualified and acting auditor of Allen county, Ohio.

W. R. Dailey, since January 1, 1945, has been, and is now, the duly elected, qualified and acting sheriff of that county.

On March 8, 1945, and for many years prior thereto, it was and had been the custom and practice in Allen county and other counties throughout the state of Ohio for the sheriffs thereof to appoint deputy sheriffs at the request of industrial, manufacturing and other establishments, for the sole purpose of keeping peace and protecting the properties and enterprises of such industrial, manufacturing and other establishments, and for such deputy sheriffs to be paid by the industrial, manufacturing and other establishments and to receive no compensation from the county by the sheriff of which they were so appointed.

It was also the custom and practice in Allen county and other counties of the state of Ohio for the sheriffs of the counties, on their own initiative, to appoint deputy sheriffs in no manner connected with or paid by any industrial, manufacturing or other establishments, who at the time of appointment are not being employed by the sheriff or assigned to any specific or regular duties as such deputy sheriffs, and who are not then certified by the sheriff to the county auditor as deputy sheriffs appointed and employed by him, but who are subject to assignment from time to time to such duties as the sheriff might require in his behalf.

To distinguish those two classes of deputy sheriffs from those assigned to full-time duty and paid regular compensation from the county treasury, they were and are popularly referred to as "special deputy sheriffs."

During his incumbency as sheriff, W. R. Dailey has regularly employed no more than four or five deputy sheriffs to perform the duties of his office, but in conformity with the custom and practice the sheriff, during his incumbency, has appointed 93 persons whom he has designated in his orders of appointment, as special deputy sheriffs, the greater number of the appointees coming within the first class and the balance coming within the second class above mentioned.

On or prior to March 8, 1945, the sheriff, W. R. Dailey, duly presented to the honorable Moran B. Jenkins, judge of the Court of Common Pleas of Allen county, a number of appointments made by him in writing, of various persons as special deputy sheriffs of Allen county, for the approval of the judge. Such written appointments included both classes above mentioned. Among those presented was that of the relator, Albert M. Geyer, who was appointed by the sheriff of his own initiative, and comes within the second class of appointees as special deputy sheriffs hereinbefore mentioned.

The appointment of the relator reads as follows:

"To The Honorable Judge of the Court of Common Pleas of Allen county:

"I do hereby appoint Albert M. Geyer as special deputy sheriff of Allen county, Ohio. Said appointee is a qualified elector of said county and not a justice of the peace therein.

"I respectfully ask your approval of said appointment.

"W. R. Dailey
"Sheriff of Allen county, Ohio."

There is a conflict in the testimony as to the representations, if any, made by the sheriff to the judge, at the time approval of the appointment of the relator was under consideration by the judge, the testimony of the judge being to the effect that the sheriff represented to him that the relator was not intended to be and never would be accorded the status of a regular deputy sheriff, which representation the sheriff denies.

Be that as it may, the appointment, as above set forth, was approved in writing by the judge, without limitation or qualification, in the words and figures following, to wit:

"The above appointment is by me approved this 8th day of March, 1945.

"Moran B. Jenkins
"Judge of the Court of Common
"Pleas, Allen county, Ohio."

Albert M. Geyer then took the following oath of office:

"I solemnly swear that I will support the Constitution of the United States, and of the state of Ohio, and that I will faithfully discharge, according to law and to the best of my ability, the duties of deputy sheriff to which I have been appointed.

"Albert M. Geyer.

"Sworn to before me by the said Albert M. Geyer and by him subscribed in my presence, this 8th day of March, 1945.

"C. N. Breese, By Inez Bitler,
"deputy clerk of the Common
"Pleas Court Allen county Ohio."

On that date the relator duly filed his bond to the state of Ohio, with the clerk of courts of the county, in the penal sum of $1,000, with The Standard Accident Insurance Company as surety thereon, which bond and

surety were, on March 8, 1945, approved by the clerk. Such bond recites that Albert M. Geyer is a special deputy sheriff, duly appointed according to law, in Allen county, Ohio; and that the General Code of Ohio in authorizing such an officer to go armed, requires that he shall first give bond to the state of Ohio, and the bond is conditioned that any person injured by improper use of weapons carried by Albert M. Geyer shall have recourse on the bond, but if the public shall be saved harmless from any improper use of such weapons carried by Albert M. Geyer, then the obligation is to be void.

On that date the relator also filed an additional bond to the state of Ohio, with the sheriff of Allen county, Ohio, in the penal sum of $1,000, with The Standard Accident Insurance Company as surety thereon. Such bond is conditioned that the relator shall faithfully, diligently and impartially discharge all the duties of his office.

On March 9, 1945, the appointment, approval and oath were filed in the office of the clerk of the Court of Common Pleas, and by him recorded in journal 44, at page 325.

Thereupon the clerk of the Court of Common Pleas of Allen county issued his certificate of appointment to the relator as deputy sheriff.

The bond for carrying concealed weapons was filed with the clerk and the bond for the faithful performance of the duties of his office was filed with the sheriff.

The relator performed no duties under his appointment, prior to December 1, 1945.

Beginning December 1, 1945, the sheriff employed the relator and assigned him to full-time service as a deputy sheriff, fixed his compensation therefor at $200 per month, and duly certified the same to the

respondent who issued his semi-monthly warrants to the relator on December 15th and 31st, respectively, for the sum of $100 each.

During the month of December 1945, the validity of relator's appointment as a basis for his employment, as above mentioned, having been questioned, the sheriff, at the suggestion of the prosecuting attorney, presented, in writing, to the common pleas judge an appointment of the relator as a deputy sheriff, and a request that the judge approve the same, which request was refused by the common pleas judge on the ground that the relator had no respect for the courts.

At all times since December 1, 1945, the relator has performed and is continuing to perform full-time duties as a deputy sheriff, and the sheriff has duly certified the relator's compensation to the respondent for semi-monthly payment. Beginning January 15, 1946, however, the respondent has failed and refused to issue to the relator, warrant for payment for such services.

The compensation of the relator, at the rate fixed by the sheriff, from January 1, 1946, to May 15, 1946, amounts to the sum of $945, no part of which has been paid.

There is money in the hands of the treasurer of Allen county to the credit of the fund from which such payment may be made, which may be used for the payment of relator's compensation in case he is entitled thereto.

The question presented by the pleadings and the evidence is whether the appointment of the relator as a "special deputy sheriff" of Allen county, Ohio, and the approval thereof by the judge of the Common Pleas Court of the county, and the relator taking the oath of office and having his appointment and approval thereof entered upon the journal of the court, and

giving bond as aforesaid, qualified relator for full-time employment as a deputy sheriff of the county.

In order to fully understand the statutory provisions relating to the question it is essential that we first consider the applicable rules of the common law.

The office of undersheriff or deputy sheriff is a common-law office; and that is the rule unless a change is effected by the Constitution or statute law of the state. In the most ancient times of the English common law, the sheriff had his undersheriff, and such deputy, when appointed, was vested with authority to perform every ministerial act that the principal sheriff could perform. Under modern jurisprudence the status of the deputy is in many respects the same. He acts for the sheriff in his name and stead. He is the sheriff's agent and as such agent he may do any ministerial act that his principal may do. He holds an appointment as distinguished from an employment. In the absence of any statutory restriction, the sheriff has full power to appoint his deputy, and he may clothe him with his ministerial duties as effectually as he could constitute him his agent to attend to private business for him as an individual. 47 American Jurisprudence, 929, 930, Sheriffs, Police and Constables, Section 154.

To assist him in the discharge of his various duties, a sheriff may appoint an undersheriff, and as many general or special deputies as the public service may require, who may discharge all the ordinary ministerial duties of the office, such as the return and service of process and the like. All acts of the undersheriff or of the deputies are done in the name of the sheriff, who is responsible for them, although such acts would amount to a trespass or an extortion on the part of the officer; for which reason he usually takes bonds from his subordinates for the faithful performance of their

duties. Cro. Eliz. 294; Dougl. 40. See 3 Bouvier's Law Dictionary, Rawle's Third Revision, 3059.

There are only five sections of the General Code in any way reflecting on the question presented in this case. These are Sections 2830 and 2831, General Code, relating to the appointment of deputy sheriffs and the responsibility of the sheriff for the acts of his deputies; Section 9, General Code, relating to the powers and terms of office of deputies generally and the responsibility of the principal for the acts of his deputies; Section 2981, General Code, relating to the appointment and employment of the deputies by county officials, the compensation of such deputies and the giving of bond by such deputies for the faithful performance of their duties; and Section 12819, General Code, prescribing, among other things, that it shall be lawful for deputies * * * to go armed if they give bond to the state of Ohio, to be approved by the clerk of the Common Pleas Court, in the sum of $1,000, conditioned to save the public harmless by reason of any unlawful use of such weapons carried by them, and that any person injured by such improper use may have recourse on the bond.

The first two sections mentioned are as follows:

"Sec. 2830. The sheriff may appoint in writing one or more deputies. If such appointment is approved by a judge of the Court of Common Pleas of the subdivision in which the county of the sheriff is situated, such approval at the time it is made, shall be indorsed on such writing by the judge. Thereupon such writing and indorsement shall be filed by the sheriff with the clerk of his county, who shall duly enter it upon the journal of such court. The clerk's fees therefor shall be paid by the sheriff. Each deputy so appointed shall be a qualified elector of such county. No justice of the peace or mayor shall be appointed such deputy."

"Sec. 2831. The sheriff shall be responsible for neglect of duty or misconduct in office of each of his deputies."

It will be noted from a comparison of those sections with the common-law rules above mentioned, that those sections amount simply to a restatement of the common-law rules with reference to the appointment of deputies by sheriffs, and the responsibility of the appointing officer for the acts of his deputies, except that such appointments must be in writing and are made subject to the approval of the common pleas judge whose approval must be indorsed in writing on such appointment, and the written appointment and indorsement thereon are required to be filed by the sheriff with the clerk of courts and entered upon the journal of such court. The appointments are subject to the further condition that each deputy so appointed shall be a qualified elector of the county for which he is appointed, and no justice of the peace or mayor shall be appointed such deputy.

The third and fourth sections of the General Code, above mentioned, are as follows:

"Sec. 9. A deputy, when duly qualified, may perform all and singular the duties of his principal. A deputy or clerk, appointed in pursuance of law, shall hold the appointment only during the pleasure of the officer appointing him. The principal may take from his deputy or clerk a bond, with sureties, conditioned for the faithful performance of the duties of the appointment. In all cases the principal shall be answerable for the neglect or misconduct in office of his deputy or clerk."

"Sec. 2981. Such officers may appoint and employ necessary deputies, assistants, clerks, bookkeepers or other employees for their respective offices, fix their compensation, and discharge them, and shall file with the county auditor certificates of such action. Such

compensation shall not exceed in the aggregate for each office the amount fixed by the commissioners for such officer. When so fixed, the compensation of each duly appointed or employed deputy, assistant, book-keeper, clerk and other employee shall be paid semi-monthly from the county treasury, upon the warrant of the county auditor. Each of such officers may require such of his employees as he deems proper to give bond to the state in an amount to be fixed by such officer with sureties approved by him, conditioned for the faithful performance of their official duties. Such bond with the approval of such officer, indorsed thereon, shall be deposited with the county treasurer and kept in his office."

It will be noted that the provisions of Section 9, General Code, so far as they apply to deputy sheriffs, constitute simply a restatement of the common-law with reference to the powers and terms of office of such deputies, the responsibility of the appointing officer for their acts, and the right of the appointing officer to take from such deputies a bond for the faithful performance of their duties.

Section 2981, General Code, was part of the Act of March 22, 1906 (98 Ohio Laws, 90), fixing the salaries of county officers and abolishing the so-called "fee system."

It will be noted that it prescribes that county officers may appoint and employ necessary deputies, fix their compensation, and discharge them; and provides further for the certification of such action to the county auditor; and that such compensation shall not exceed in the aggregate for each office the amount fixed by the commissioners for such office. It provides further for the method of payment of such deputies, and the giving of bond by such deputies if required by the appointing officer.

We have already set forth the applicable provisions of Section 12819, General Code, which are self-explanatory.

It will be noted that none of the General Code sections above mentioned contains any provisions as to the appointment or employment of "special deputies" or "special deputy sheriffs." Furthermore, there is no statutory definition of "special deputy" or "special deputy sheriff." However, it will be noted that under the common law the sheriff had the right to appoint an undersheriff and as many general or special deputies to assist him in the discharge of his various duties as the public service may require, and that such deputies act for the sheriff in his name and stead and are the sheriff's agents and as such agents may do any ministerial act that the sheriff may do.

It will be noted that there is no statutory restriction upon the right of the sheriff to appoint special and general deputies except that such appointments must be approved by the common pleas judge of the county of which the sheriff is an officer. In the absence of such statutory restriction the common law prevails and the sheriff has the authority to appoint both general and special deputies.

The time and extent of the exercise of the authority of the sheriff by such special deputy is a matter solely for the determination of the sheriff, as the deputy acts as his agent. A deputy sheriff may be special in the sense that he is authorized to perform only part of the duties of the sheriff, or may be special in the sense that he is appointed by the sheriff without being assigned to perform any duties of the sheriff but being subject to assignment to duty by the sheriff from time to time as the sheriff in his discretion may determine. In either event he may receive compensation from the county only when he is employed by the sheriff and his compensation fixed by the sheriff and

the sheriff certifies his action in this respect to the county auditor, as prescribed by Section 2981, General Code.

A sheriff being a public officer is presumed to act in good faith and within the scope of his authority. Accordingly, his appointment of deputies who are not then assigned to duty by him is presumed to be done for the purpose of providing a reserve of persons qualified as deputy sheriffs whom he can employ as and when he deems their employment necessary or advisable to perform any part of the duties of his office.

A sheriff is vested with absolute discretion to determine what deputies shall be employed, the length of their employment, and the duties of his office to be performed by them, and subject to the statutory restriction as to the aggregate of compensation to be paid for his office, to fix the compensation of such deputies. As the sheriff is vested with this discretion, the common pleas judge was without authority to place any limitation on the duties to be performed by the relator as special deputy sheriff and consequently any representations made by the sheriff to the common pleas judge as to any limitation on relator's employment were immaterial.

For the reasons mentioned, the appointment of the relator as a special deputy sheriff and the approval thereof by the common pleas judge, and relator qualifying for such office by taking the oath of office and giving bond in conformity with the statutory requirements, constituted relator a lawful (*de jure*) deputy sheriff employable as the sheriff saw fit. Relator's subsequent employment and the fixing of his compensation by the sheriff and the certification of his action by the sheriff to the county auditor entitled relator to payment from the county treasury for the services rendered by him, at the rate fixed by the sheriff.

The writ will, therefore, be allowed as prayed for in relator's petition, at the costs of the county.

*Writ allowed.*

MIDDLETON, P. J., JACKSON and GUERNSEY, JJ., concur.