IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date:  May 11, 2015**

**NO. 34,447**

**JOSE LUIS LOYA,**

Plaintiff**,**

v.

**GLEN GUTIERREZ, Commissioned Officer of Santa Fe County,**

Defendant/Third-Party Plaintiff/Appellant-Petitioner,

v.

**COUNTY OF SANTA FE,**

Third-Party Defendant/Appellee-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Barbara J. Vigil, District Judge**

VanAmberg, Rogers, Yepa, Abeita & Gomez, LLP
Carl Bryant Rogers
Santa Fe, NM

Ray A. Padilla, P.C.
Ray A. Padilla

Albuquerque, NM

for Petitioner


Law Offices of Michael Dickman
Michael Dickman
Santa Fe, NM

for Respondent


Robles, Rael & Anaya, P.C.
Luis E. Robles
Frank T. Apodaca
Albuquerque, NM

for Amicus Curiae New Mexico Association of Counties

# OPINION

**BOSSON, Justice.**

{1}     Given New Mexico's highways that traverse both state and tribal lands, it is not uncommon that a tribal police officer patrolling those highways may be commissioned as a deputy county sheriff to arrest non-Indians and prosecute them in state court when they commit state traffic offenses on tribal land. In light of those recurring facts, we determine a county's legal obligation when a non-Indian, arrested by a tribal officer and prosecuted in state court for state traffic offenses, sues the arresting tribal officer for federal civil rights violations. More particularly, we decide when the county has an obligation under the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1 to -29 (1976, as amended through 2009) (NMTCA), to provide that tribal police officer with a legal defense in the federal civil rights action. The district court as well as our Court of Appeals found no such legal duty, in part because it concluded that the tribal officer was not a state public employee as defined in the NMTCA. We hold to the contrary, finding clear evidence in the text and purpose of the NMTCA requiring the county to defend the tribal officer, duly commissioned to act as a deputy county sheriff, under these circumstances endemic to the New Mexico experience.

**BACKGROUND**

{2} On September 5, 2009, Officer Glen Gutierrez, on duty as a full-time salaried police officer of the Pueblo of Pojoaque and also commissioned as a Santa Fe County deputy sheriff, was patrolling a portion of U.S. Highway 84/285 located within the exterior boundary of the Pojoaque Pueblo. He was driving his tribally-marked and issued police vehicle and was dressed in his full tribal uniform displaying his tribal badge. He was also carrying a deputy's commission card issued to him by the Santa Fe County sheriff.

{3} Officer Gutierrez observed Jose Luis Loya making a dangerous lane change and engaged his emergency equipment to signal Loya to pull over. Once stopped, Officer Gutierrez asked Loya to step out of his vehicle and informed Loya that he was under arrest for reckless driving in violation of NMSA 1978, Section 66-8-113 (1987), a state law. Officer Gutierrez placed Loya in the back of his patrol vehicle and transported Loya to the Pojoaque Tribal Police Department for processing. Loya, a non-Indian, was not subject to prosecution for violation of tribal law, and therefore, he was transported from the Pueblo to the Santa Fe County Adult Detention Center where he was incarcerated. Ultimately, Officer Gutierrez prosecuted Loya for reckless driving in Santa Fe County Magistrate Court.

{4} Loya felt aggrieved by what happened to him that night. Based on those

events, Loya filed a civil complaint against Officer Gutierrez in the First Judicial District Court to recover damages for deprivation of his civil rights under 42 U.S.C. Section 1983 (1996) (Section 1983), claiming false arrest, malicious prosecution, and use of excessive force. Section 1983 creates a civil action for damages under federal law against any person acting under color of state law who violates the Constitution and laws of the United States. *See* 42 U.S.C. § 1983. "Native American tribes and those acting under *tribal law* do not act under color of state law within the meaning of [Section] 1983," but Native-American actors may be subject to a Section 1983 claim if their actions are taken pursuant to state authority. *Williams v. Bd. of Cnty. Comm'rs*, 1998-NMCA-090, ¶ 20, 125 N.M. 445, 963 P.2d 522 (emphasis added). "If an individual is possessed of state authority and purports to act under that authority, his action is state action." *Id.* ¶ 21 (internal quotation marks and citation omitted).

{5} The State of New Mexico has exclusive criminal jurisdiction over non-Indians for actions committed within the exterior boundaries of a tribe or pueblo pursuant to the Indian Pueblo Land Act Amendments of 2005. *See* Pub. L. No. 109-133, 119 Stat. 2573 (2005). A tribal police officer may have jurisdictional authority to enforce tribal civil traffic ordinances against non-Indians and may eject or exclude a non-Indian

3

engaging in criminal activity or may detain and transport the offender to proper state authorities. *See Pueblo of Pojoaque Civil Traffic Code, Tribal Council Resolution No. 1992-95* (August 20, 1992). *See also Duro v. Reina*, 495 U.S. 676, 696-97 (1990). A tribal officer may not arrest, charge, jail, or prosecute non-Indian offenders for violation of state law without some additional state authority. *Id.*

{6}     According to the affidavit of Pueblo of Pojoaque Police Chief John Garcia, the limited jurisdiction of tribal police officers historically created a gap in effective law enforcement on state highways located within the exterior boundaries of a tribe or pueblo. The county sheriff did not have adequate staff to combat criminal activity by non-Indians on state highways traversing tribal lands. Likewise, the tribal officers lacked authority to prosecute non-Indian offenders. To overcome this limitation and encourage jurisdictions to work together, the Santa Fe County sheriff issued commissions to Pojoaque Pueblo police officers to act as county sheriff's deputies.

{7}     In the course of that practice, on June 23, 2008, Santa Fe County Sheriff Greg Solano issued a commission to Officer Gutierrez appointing him as a Santa Fe County deputy sheriff for purposes of enforcing state traffic laws and criminal statutes against non-Indian offenders for offenses committed within the exterior boundaries of Pojoaque Pueblo. To qualify for the appointment, Sheriff Solano required Officer

4

Gutierrez to provide documentation showing successful completion of state and/or federal law enforcement training and certification, a written copy of his background investigation, and his written application. Sheriff Solano also required Officer Gutierrez to take the oath mandated by the New Mexico Constitution to "support the Constitution of the United States, the Constitution and laws of the State of New Mexico, the laws of the County of Santa Fe and faithfully and impartially discharge the duties of said office to the best of [his] ability." *See* N.M. Const. art. XX, § 1 ("Every person elected or appointed to any office shall, before entering upon his duties, take and subscribe to an oath or affirmation that he will support the constitution of the United States and the constitution and laws of this state, and that he will faithfully and impartially discharge the duties of his office to the best of his ability.").

{8}     As stated above, absent additional authority tribal police officers have no legal authority to charge non-Indian offenders for a violation of state law even if the violation is committed on tribal land. *See Duro*, 495 U.S. at 696-67. It is the commission as a county deputy sheriff that gives tribal police the authority to make such arrests while acting under state law. In this case, the very reason Officer Gutierrez, a *tribal* police officer, is subject to a Section 1983 claim for actions taken

under color of *state* law, is because he was acting under his state authority as a deputy sheriff, not tribal authority, when he charged, detained, and prosecuted Loya under state law. *See Williams*, 1998-NMCA-090, ¶¶ 20-21.

{9} Upon being sued, Officer Gutierrez tendered two requests to Santa Fe County to provide him with a legal defense and indemnification, if necessary, in accord with the defense and indemnification provisions of the NMTCA, § 41-4-4(B), (D). The County claimed it did not have any duty to provide a legal defense and indemnification, asserting that Officer Gutierrez was not a state "public employee" as defined by the NMTCA. *See* § 41-4-3(F). Following the denial of his request, Officer Gutierrez filed a third-party complaint in the Loya litigation against the County seeking a declaratory judgment that the NMTCA required the County to defend and indemnify him with respect to Loya's Section 1983 claims against him. The County answered and asserted a counterclaim for declaratory judgment in its favor.

{10} Both parties then filed motions for summary judgment, each basing its claim on an interpretation of the County's duties under the NMTCA. The district court ruled for the County, finding that Officer Gutierrez was not entitled to a defense under the NMTCA. The Court of Appeals affirmed. *Loya v. Gutierrez*, 2014-NMCA-028, ¶ 23,

6

319 P.3d 656. We granted certiorari to resolve a significant issue of law that potentially affects law enforcement wherever state and tribal lands border each other throughout New Mexico. *Loya v. Gutierrez*, 2014-NMCERT-002.

**DISCUSSION**

**The New Mexico Tort Claims Act**

{11}     The issue before us is whether the County is obligated to defend and potentially indemnify Officer Gutierrez when he was sued for actions taken to charge, arrest, and prosecute a non-Indian offender in state court for violating state law on Indian land. The parties agree that the NMTCA guides this determination. The defense and indemnification provisions of the NMTCA, § 41-4-4(B), (D), set forth the obligation of governmental entities to protect public employees when they are sued for actions taken in the scope of their duties. Specifically, Subsection (B) states:

> [A] governmental entity shall provide a defense, including costs and attorney['s] fees, for *any public employee* when liability is sought for:
>        (1) any tort alleged to have been committed by the public employee while acting within the scope of his duty; or
>        (2) any violation of property rights or any rights, privileges or immunities secured by the constitution and laws of the United States or the constitution and laws of New Mexico when alleged to have been committed by the public employee while acting within the scope of his duty.

Section 41-4-4(B) (emphasis added). Likewise, if a settlement or judgment is entered

7

against a public employee acting within the scope of his or her duties, the governmental entity is required to pay the judgment or settlement. Section 41-4-4(D). These provisions are intended to protect "public employee[s]" from individual liability when they are acting within the scope of their duties, thus operating as a kind of statutory insurance policy. *Risk Mgmt. Div. v. McBrayer*, 2000-NMCA-104, ¶ 6, 129 N.M. 778, 14 P.3d 43. Accordingly, we focus first on whether Officer Gutierrez was acting as a "public employee" within the meaning of the NMTCA when he arrested Loya on a state highway traversing tribal lands.

**Whether Officer Gutierrez Is a Public Employee Under the NMTCA**

{12}     Section 41-4-3(F) of the NMTCA defines "'public employee'" as "an officer, employee or servant of a governmental entity, excluding independent contractors" except for specifically defined individuals not relevant here. "'[G]overnmental entity' means the state or any local public body." Section 41-4-3(B). "'[S]tate' . . . means the state of New Mexico or any of its branches, agencies, departments, boards, instrumentalities or institutions." Section 41-4-3(H). "'[L]ocal public body' means all political subdivisions of the state and their agencies, instrumentalities and institutions." Section 41-4-3(C). Based on these definitions the County is a "governmental entity," and the Pueblo of Pojoaque is not a "governmental entity"

8

under the NMTCA.

{13}     The question then is whether Officer Gutierrez was acting as a "public employee" for the County when he arrested Loya. The "public employee" definition in turn identifies eighteen categories of persons who are deemed to be "public employees," two of which pertain to this case. Section 41-4-3(F). Section 41-4-3(F)(2) identifies "law enforcement officers" as "public employees." Section 41-4-3(F)(3) identifies "public employees" as those "persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation."

**Whether a Tribal Police Officer Can Also Be a Public Employee Under the NMTCA Under Certain Circumstances**

{14}     The County makes a number of arguments as to why Officer Gutierrez cannot be a public employee under the NMTCA.[1] We consider them in the order of their

---

[1]Following oral argument, the County submitted supplemental authority to support its position that a tribal officer cannot be a public employee under the NMTCA. *See Trujillo v. Romero*, No. 13-CV-1178 MCA-SCY, Doc. 112 (D.N.M. Mar. 3, 2015) (declining to certify question of whether the NMTCA requires a governmental entity to provide a defense and/or indemnification to a tribal officer commissioned as a deputy sheriff when, acting under color of state law, he allegedly commits torts and/or violations of Section 1983, because the question can be answered by an appellate opinion of the New Mexico Court of Appeals). In reaching the conclusion that the tribal officers in that case were not public employees under the NMTCA, the federal district court expressly relied on the Court of Appeals'

9

presentation.

{15} The County first argues that Officer Gutierrez is not a "public employee" based on the opinion from the Court of Appeals in *Williams*, 1998-NMCA-090, ¶ 26. *Williams* involved a Navajo tribal officer who was "cross-deputized" as a San Juan County sheriff's deputy, commissioned as a Bureau of Indian Affairs special deputy police officer, and certified by the New Mexico state police. *Id.* ¶ 2. The officer in that case issued a tribal speeding ticket, under Navajo law, to a non-Indian driving within the exterior boundaries of the Navajo Nation. *Id.* ¶¶ 2, 3. The person receiving the tribal speeding ticket (the plaintiff) sued the tribal officer under the NMTCA for alleged tortious behavior. *Id.* ¶¶ 5, 26. The plaintiff argued that the tribal officer, though making the arrest under tribal law, was subject nonetheless to the NMTCA because his "cross-deputization" to act under state law as a deputy sheriff made him a "public employee" under the NMTCA. *Id.* ¶ 26. The Court of Appeals affirmed dismissal of the tort claims, holding that the mere issuance of a deputy commission—without more—does not automatically transform a tribal officer into

decision in this case. *See generally Loya*, 2014-NMCA-028. For the reasons set forth in this opinion, we reverse the Court of Appeals and instead hold that, when enforcing state law, a tribal officer commissioned as a county sheriff's deputy is a public employee. Therefore, *Trujillo* is not persuasive.

10

a "public employee" under the NMTCA. *Id.* The Court in *Williams* noted that the tribal officer issued a tribal traffic ticket, not a state traffic ticket, to the plaintiff and was therefore acting under Navajo law when he was sued. *Id.* ¶ 3. Importantly, the Court of Appeals left open the possibility that a tribal officer could be a "public employee" under the NMTCA if there were more evidence than just the issuance of a state commission to the tribal officer. *See Williams*, 1998-NMCA-090.

{16} This is just such a case. Unlike *Williams*, Officer Gutierrez was enforcing *state* law, not tribal law, when he arrested Loya and charged him in state court for violating state law, thereby acting as a state officer and not a tribal officer. If Officer Gutierrez had issued a tribal ticket to Loya under Pueblo authority, he would have been acting on behalf of the Pueblo and the result would be the same as in *Williams*. The additional fact that Officer Gutierrez was acting on behalf of the County, not the Pueblo, creates an important distinction between the two cases, and thus provides the additional evidence missing from *Williams*. We conclude that the Court of Appeals' analysis in *Williams* is consistent with our determination here that Officer Gutierrez is not excluded from the NMTCA definition of "public employee" on the mere basis that he is also employed as a tribal officer. We next address whether Officer Gutierrez falls within one of the two identified categories of "public employee" under the

11

NMTCA.

{17}    As set forth previously, one definition of a public employee under the NMTCA is a "law enforcement officer." Section 41-4-3(D) defines "law enforcement officer" as:

> [A] full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes.

Officer Gutierrez was not a "full-time salaried public employee" or even a "part-time salaried police officer" of the County or any other "governmental entity" recognized by the NMTCA. He was compensated by the Pueblo of Pojoaque and not by the County.

{18}    This does not end the inquiry, however. In addition to the "law enforcement officer" category, the NMTCA defines a public employee as a "person[] acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation." Section 41-4-3(F)(3). The statute does not supply a definition for this category, so we look first to the text. *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 13, 121 N.M. 764, 918 P.2d 350 ("In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the

12

language used and consider the statute's history and background.").

**Whether Officer Gutierrez Is a "Person Acting On Behalf Of Government Or In Service Of a Governmental Entity In Any Official Capacity, Whether With Or Without Compensation"**

{19}     To meet this category of "public employee," Officer Gutierrez had to be acting on behalf of the County with or without compensation. Section 41-4-3(F)(3). Officer Gutierrez must also have been acting in any official capacity. *Id.* At first glance it would appear that Officer Gutierrez satisfies both requirements. At the time of the Loya arrest, Officer Gutierrez was acting in an official capacity as a duly-sworn sheriff's deputy; he could not have legally arrested Loya, a non-Indian, any other way. When Officer Gutierrez made the arrest, he was acting on behalf of the County, not the Pueblo, which continued through Officer Gutierrez's prosecution of Loya in state magistrate court for the state traffic offense. In order to be certain, however, we must first understand the nature of Officer Gutierrez's commission to act as a deputy sheriff. A brief history of these commissions helps inform this understanding.

**History Of Law Enforcement Commissions**

{20}     We start with the authority of a sheriff to commission a deputy. A sheriff's ability to commission deputies is rooted in ancient English common law under which a sheriff has inherent authority to vest his undersheriff with authority to perform

13

every ministerial act the principal sheriff may perform. *State ex rel. Geyer v. Griffin*, 76 N.E.2d 294, 298 (Ohio Ct. App. 1947) (per curium).

> [The deputy] acts for the sheriff in his name and stead. . . . In the absence of any statutory restriction, the sheriff has full power to appoint . . . an undersheriff, and as many general or special deputies as the public service may require, who may discharge all the ordinary ministerial duties of the office, such as the return and service of process and the like. All acts of the undersheriff or of the deputies are done in the name of the sheriff, who is responsible for them.

*Id.* In modern jurisprudence, the common-law office of deputy sheriff remains much the same and is the presumed rule unless a change is effected by the Constitution or state statute. *Id.*

{21}    In New Mexico, the power of a county sheriff to commission someone as a deputy to "preserve the public peace and to prevent and quell public disturbances," N.M. Att'y Gen. Op. 57-83 (1957), was codified as early as 1856 by the Legislative Assembly of the Territory of New Mexico. That statute states:

> Section 1. That the sheriffs in all the counties of this Territory shall have power to appoint deputies . . . .
> Sec. 2. Each deputy . . . shall take an oath to discharge faithfully the duties of his office, and the sheriffs shall be respons[i]ble for the acts of their deputies as such.
> Sec. 3. The said deputies are hereby authorized to discharge all the duties which belong to the office of sheriff, that may be placed under their charge by their principals, with the same effect as though they were executed by the respective sheriffs.

1855-56 N.M. Laws, ch. 2, §§ 1-3. Under that statute, the sheriff in every territorial county had the power to appoint deputies as long as they took an oath to "discharge faithfully the duties of his office" prior to entering upon the duties thereof. *Id.* § 2. In line with common-law principles, the statute mandated that "the sheriffs shall be respons[i]ble for the acts of their deputies." *Id.* In 1905, the Legislature added eligibility requirements for deputy sheriffs. NMSA 1915, § 1257 (1905). The same oath was later added to the New Mexico Constitution. *See* N.M. Const. art. XX, § 1.

{22}    In 1891, the Legislative Assembly enacted an additional statute to require all appointed special deputy sheriffs, marshals, police officers, or other peace officers in New Mexico to be citizens of the Territory of New Mexico. 1891 N.M. Laws, ch. 60, § 1. The statute was amended in 2006 to require that all deputy sheriffs be United States citizens. *See* NMSA 1978, § 4-41-10 (2006). The 1891 statute also required a written appointment from the person authorized by law to appoint special deputy sheriffs before the appointed person could "assume or exercise the functions, powers, duties and privileges incident and belonging to the office of special deputy sheriff, special constable, marshal or police[ officer] or other peace officer." 1891 N.M. Laws, ch. 60, § 1.

**Extension Of Commissions To Tribal Officers**

15

{23}    During the 1950s, the New Mexico Attorney General issued several legal opinions advising that full-time police officers employed by New Mexico tribes and pueblos could be commissioned as special deputies as long as they met statutory qualifications under NMSA 1953, Section 15-40-10 (1905); NMSA 1953, Section 15-40-12 (1901); and NMSA 1953, Section 39-1-9 (1891). N.M. Att'y Gen. Op. 55-6305 (1955); N.M. Att'y Gen. Op. 57-83. The Attorney General characterized these specially commissioned tribal officers as "unpaid [county sheriff's] deput[ies]." N.M. Att'y Gen. Op. 66-91 (1966). Today, county sheriffs maintain that authority under New Mexico law to appoint special sheriff's deputies to preserve the public peace and to prevent and quell public disturbances, including the authority to appoint tribal police officers who satisfy statutory qualifications. *See* NMSA 1978, § 4-41-5 (1975) ("Deputy sheriffs; appointment and term; merit system"); NMSA 1978, § 4-41-8 (1905) ("Deputy sheriff; qualifications; character; revocation of commission"); *and* NMSA 1978, § 4-41-9 (1855-56) ("Deputy sheriffs; powers and duties").

**Commissioning Tribal Officers By Contractual Agreement And Not Just By Appointment**

{24}    In addition to the authority of the county sheriff to appoint tribal police officers to act as special deputies, the Legislature authorized additional law enforcement

16

agencies during the 1970s to issue commissions through formal agreements with tribal entities. The Mutual Aid Act, NMSA 1978, §§ 29-8-1 to -3 (1971), authorizes "[a]ny state, county or municipal agency having and maintaining peace officers [to] enter into mutual aid agreements with any public agency as defined in the Mutual Aid Act, with respect to law enforcement." Section 29-8-3. Other "public agenc[ies]" include "an Indian tribal council, Indian pueblo council and the state or any county or municipality thereof." Section 29-8-2. To be valid, a mutual aid agreement must be in writing and approved by both the "public agency"—in this case the Pueblo of Pojoaque—and the governor of New Mexico. *See State v. Branham*, 2004-NMCA-131, ¶ 14, 136 N.M. 579, 102 P.3d 646; *see also* § 29-8-3.

{25}     The other type of statutory agreement, referred to as a "cross-commission agreement," is authorized under NMSA 1978, Section 29-1-11 (2005). This provision authorizes the chief of the New Mexico state police to issue commissions as New Mexico peace officers to members of tribal police departments as long as statutory procedures are followed and the requirements and responsibilities of each entity are set forth in a formal written agreement. Section 29-1-11(B). Originally, the statute only authorized cross-commission agreements between the New Mexico state police and members of the Navajo police department. NMSA 1953, § 39-1-12 (1972). In

17

1979, the Legislature amended the statute to authorize state police to enter into agreements with members of any New Mexico tribe or pueblo. NMSA 1978, § 29-1-11(B) (1979). As indicated, this statute only pertains to agreements with the state police.

{26} The 1979 amendment also added several conditions to be included in a cross-commission agreement, including a training requirement for all commission applicants, proof that the tribe or pueblo entering into the agreement has adequate public liability and property damage insurance for vehicles operated by the peace officers and police professional liability insurance, and a requirement that the chief of the New Mexico state police and the tribe or pueblo meet at least quarterly to discuss the status of the agreement. *Id.* ¶ C. Importantly, in 2005 the Legislature added a subsection to the statute cautioning that these procedures in the cross-commission statute are separate from, and do not "impair[] or nullif[y]" the traditional "authority of county sheriffs to appoint . . . duly commissioned state or federally certified officers who are employees of a police or sheriff's department of an Indian nation, tribe or pueblo in New Mexico . . . as deputy sheriffs authorized to enforce New Mexico criminal and traffic law." Section 29-1-11(G).

{27} Thus, the Mutual Aid Act and the statute authorizing cross-commission

18

agreements are not, and never have been, the exclusive source of authority for commissioning a tribal police officer to act under state law as a deputy sheriff. Sheriffs retain that traditional authority, going back to the common law and early territorial days, to appoint deputies, including tribal police officers, to assist the sheriff in the enforcement of New Mexico criminal and traffic law. These appointments may occur, pursuant to the sheriff's historic authority under Section 4-41-5, without a formal agreement between governmental entities and, more to the point, without any assurance that the tribe will indemnify the county in the event of litigation.

{28} Accordingly, Santa Fe County Sheriff Solano had the authority under state law to commission Officer Gutierrez, notwithstanding the lack of any formal agreement between the County and the Pueblo of Pojoaque. At the time of the Loya arrest, Officer Gutierrez was duly acting as an unpaid sheriff's deputy, a volunteer, no different from any volunteer deputy commissioned over the past century.

**The Effect Of the Sheriff's Unanswered Letter To the Pueblo**

{29} The County argues, however, that in this particular instance Sheriff Solano issued the commission subject to the provisions set forth in the January 24, 2005, letter from Sheriff Solano to Pueblo of Pojoaque Tribal Police Chief John Garcia.

19

According to the County, that letter memorialized the scope of authority conferred upon Officer Gutierrez, provided rules for commissioned deputies to follow when acting on behalf of the County, and delineated financial responsibilities between the County and the Pueblo. In particular the letter stated that the Pueblo of Pojoaque shall be liable if a commissioned officer "is sued for actions taken while effecting an arrest or pursuing a suspect." The County argues that the letter created an agreement between the County and the Pueblo of Pojoaque and that Officer Gutierrez is commissioned pursuant to the conditions set forth in that agreement, including the Pueblo's assumption of liability.

{30} We find the County's position unpersuasive. The record is devoid of any evidence that Pojoaque Police Chief Garcia, the Pueblo Governor, or the Pueblo Council ever acknowledged the existence of that letter, much less agreed to its terms. Officer Gutierrez claimed that he was unaware of the letter at the time he took the oath of office as a commissioned deputy sheriff. The district court below issued no contrary findings. Nothing in the record indicates any efforts by Sheriff Solano to follow through with these purported (and unilateral) conditions. There is no indication of any discussions verifying that the Pueblo had accepted liability for its officers. Accordingly, we need not decide the letter's legal efficacy without any

20

evidence of its acceptance. And we certainly could not decide the letter's legal efficacy without hearing from the Pueblo. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) ("It is settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed." (internal quotation marks and citations omitted)); *Am. Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1379 (8th Cir. 1985) ("[N]othing short of an express and unequivocal waiver can defeat the sovereign immunity of an Indian nation.").

{31} As discussed earlier, the Legislature has provided for agreements between Native-American tribes and the State, but this letter does not fall within anything the Legislature has authorized. Without a written, executed agreement, it does not comply with the terms of the Mutual Aid Act. The letter does not create a valid cross-commission agreement under Section 29-1-11 because those agreements are limited to commissions issued by the New Mexico state police. In fact, the statute clearly states that the authority of county sheriffs to appoint duly commissioned deputies is not limited, impaired or nullified by the provisions of Section 29-1-11. *See* Section 29-1-11(G). The statute allows for the appointment of commissioned deputies (including tribal officers), but makes no reference to the kind of agreement envisioned here, including assumption of liability. *Id.*

{32} Accepting that Officer Gutierrez was commissioned as a volunteer sheriff's deputy and not pursuant to any formal agreement executed under New Mexico statute, we return to our initial, "working" determination that Officer Gutierrez seemed to be acting as a "public employee" under the NMTCA when he arrested and prosecuted Loya. *See* § 41-4-3(F). As an unpaid deputy, Officer Gutierrez was acting in an "official capacity" and "on behalf or in service of" the County sheriff and Santa Fe County. *See* § 41-4-3(F)(3). Satisfaction of these two requirements necessarily makes Officer Gutierrez a "public employee" under the NMTCA; he was a "person[] acting on behalf or in service of a governmental entity [the County] in any official capacity, whether with or without compensation." *Id.* As a "public employee" under that section of the NMTCA, Officer Gutierrez was entitled to its benefits including a legal defense and indemnification.

{33} As an aside, it is of no import that the County did not compensate Officer Gutierrez for his service. The language in Section 41-4-3(F)(3) "with or without compensation" is an "express declaration of legislative intent in including volunteers acting on behalf of a governmental entity within the purview of the [NM]TCA." *Celaya v. Hall*, 2004-NMSC-005, ¶ 9, 135 N.M. 115, 85 P.3d 239. There is clear legislative intent to protect both paid employees and volunteers from personal

22

liability for actions taken on behalf of their "governmental entity" employer with or without any agreement pertaining to indemnification and legal defense. We see no reason why Officer Gutierrez, an unpaid sheriff's deputy, should be treated any differently simply because the Legislature also intended to provide protection from personal liability for full-time "law enforcement officers" as defined under the NMTCA. The NMTCA treats volunteers the same as any other employee and "protects the public by ensuring that government will be financially accountable when volunteers working within their scope of duty" are hauled into court. *Celaya,* 2004-NMSC-005, ¶ 9.

**As a Tribal Police Officer, Officer Gutierrez Is Not Limited To the "Law Enforcement Officer" Subcategory Of "Public Employee"**

{34}     The County further argues that even if a tribal police officer may technically fit within the definition of a "public employee" as a person "acting on behalf . . . of . . . government[] . . . in any official capacity," the operative category in this inquiry is nonetheless limited to "law enforcement officer." *See* § 41-4-3(D), (F). According to the County, because Officer Gutierrez was purporting to act specifically as a law enforcement officer and not generally as a public employee when he arrested and charged Loya, then he can only qualify under the NMTCA as a "law enforcement

23

officer." As previously acknowledged, of course, Officer Gutierrez is not a "law enforcement officer" as defined under the NMTCA because he is not a "full-time salaried public employee" of the County. What the County is really trying to do, therefore, is to exclude Officer Gutierrez and other unpaid sheriff's deputies from the protections provided by the NMTCA because the County does not pay them a salary for their service. We first look at the policy implications of such as position.

{35} Presumably, allowing the County sheriff to commission tribal police officers as deputies has enhanced the law enforcement presence and effectiveness within the County, resulting in improved public safety at little cost to the County. *See Affidavit of Chief John Garcia Pueblo of Pojoaque Tribal Police Department* in *Loya v. Gutierrez*, First Judicial District Court No. D-101-CV-2010-3854, dated November 10, 2011. The County seeks to keep that benefit while denying any responsibility for the risks arising from its creation—namely actions taken by volunteer deputies who are sued while acting on the County's behalf. The County's position would leave those unpaid deputies exposed to personal liability, left to pay the costs of their own defense, while simultaneously leaving members of the public like Loya without any realistic chance of financial recourse. To put the matter delicately, such a result would seem to be at odds with sound public policy. The Legislature may opt for such a

24

course, but we would need an unambiguous expression of legislative intent, far from what we have at present.

{36} The County argues that the more specific public employee definition—law enforcement officer—should prevail over more general provisions touching on the same subject. The County's argument proceeds as follows: Officer Gutierrez was acting in a law enforcement officer capacity when he stopped and arrested Loya, the term "law enforcement officer" is a more specific subcategory of "public employee" than "persons acting on behalf of," so "law enforcement officer" should be the operative category.

{37} The proposition that specific prevails over general stems from a case where the notice requirements stated within a statute conflicted with the notice requirements set forth in a rule. *Prod. Credit Ass'n v. Williamson*, 1988-NMSC-041, 107 N.M. 212, 755 P.2d 56. This Court held that the statute addressed the specific type of proceeding at issue in the case and was therefore controlling over the rule which addressed general notice requirements, hence creating the specific over general rule of statutory interpretation. *Id.* ¶ 5.

{38} Here, we are not dealing with different parts of a statute or a conflict between a statute and a rule; we are looking at one definition. The definition of "public

employee" includes 18 different categories. *See* § 41-4-3(F). "Law enforcement officer" might be more focused than "persons acting on behalf or in service of a governmental entity in any official capacity," but that does not make it more specific for purposes of statutory construction. The Legislature purposely listed multiple categories, and we must assume it did so for good reason. We cannot allow the County to limit the categories available to Officer Gutierrez without ignoring the clear intent of the Legislature. As a result, we decline to adopt the County's position that Officer Gutierrez must meet the "law enforcement officer" definition in order to be recognized as a "public employee."

**The Duty To Provide a Defense In a Section 1983 Action Is Not Subject To the State's Assertion Of Sovereign Immunity**

{39}     The County next argues that even if Officer Gutierrez is a "public employee" under the NMTCA, there is no duty to provide a legal defense here because both the County and Officer Gutierrez are immune from liability. Under the NMTCA, the State's general policy is that "governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act." Section 41-4-2(A). The County interprets this policy statement to mean that it has a duty to defend its employees only when it is or could be liable for a tort for which sovereign immunity

26

has been waived under the NMTCA.

{40} The NMTCA asserts sovereign immunity from liability for any tort except as waived by Sections 41-4-5 to -12. *See* § 41-4-4(A). Here, the County argues it is immune from suit because none of the stated waiver exceptions apply. Specifically, Officer Gutierrez cannot be sued under Section 41-4-12,[2] the only waiver exception otherwise applicable to this situation, because, as stated earlier in this opinion, Officer Gutierrez is not a full time salaried "law enforcement officer" for the County. If there can be no NMTCA liability, then the County has no duty to defend. With respect, the County misperceives the law in several respects.

{41} The terms "waiver" and "sovereign immunity" do not appear anywhere in the text of Section 41-4-4(B), the provision that sets forth the County's duty to provide a legal defense. In order to accept the County's argument that the defense obligation is dependent upon a statutory waiver of sovereign immunity, we would have to read

---

[2]Section 41-4-12, liability for law enforcement officers, waives immunity for liability from:

> personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, . . . or deprivation of any rights privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

words into Section 41-4-4(B), limiting the County's defense obligation to actions brought under one of the torts for which sovereign immunity has been waived. But Section 41-4-4(B) does not say that; it imposes no such limitation. The statute reads, "a governmental entity [the County] shall provide a defense . . . when liability is sought for" (1) "any tort" or (2) "any violation of . . . any rights, privileges or immunities secured by the constitution and laws of the United States [civil rights claims] . . . ." *Id.* Textually then, Section 41-4-4(B) requires a defense equally for (1) claims that *are* torts for which sovereign immunity has been waived, and (2) claims that are *not* torts (civil rights claims) for which sovereign immunity has not been waived under the NMTCA.

{42}    In addition to being at odds with the statute's text, the County's position would seem to contradict settled insurance law and the expectations that normally arise with respect to an insurer's duty to defend. It is the norm that an insurer, though denying coverage and liability, must nonetheless defend its insured unless and until it receives a judicial ruling in its favor relieving it of any further obligations. *See Miller v. Triad Adoption & Counseling Servs., Inc.*, 2003-NMCA-055, ¶ 9, 133 N.M. 544, 65 P.3d 1099 ("If the allegations of the complaint or the alleged facts tend to show that an occurrence comes within the coverage of the policy, the insurer has a duty to defend

28

regardless of the ultimate liability of the insured."); *see also Lujan v. Gonzales*, 1972-NMCA-098, ¶ 22, 84 N.M. 229, 501 P.2d 673 (an insurer's "good faith belief that there was no coverage . . . is not a defense to the breach of the duty to defend").

{43} Here, contrastingly, the County, while denying any liability to Loya for Officer Gutierrez's actions, wants to be relieved of any duty to defend Officer Gutierrez even before it obtains a ruling in its favor. The County, unlike a normal insurer, would leave Officer Gutierrez, in the position of an insured, to fight off liability on his own at his own expense. This would appear to fly in the face of Section 41-4-4(B) which equates the duties of the County with the duties of an insurer. *See* § 41-4-4(B) ("Unless an insurance carrier provides a defense, a governmental entity shall provide a defense . . . for any public employee when liability is sought for" (1) a tort or (2) civil rights violations under federal or state law.)

{44} Focusing on the specific rights and obligations set forth in the NMTCA, Section 41-4-4(A) asserts sovereign immunity from liability except as waived; however, the assertion is only for immunity from tort liability, not civil rights liability. *See* § 41-4-2(B) ("Liability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty and . . . standard of care."); § 41-4-4(A) ("A governmental entity and any public employee . . . are granted

29

immunity from liability for any tort except as waived by . . . Sections 41-4-5 through 41-4-12.").

{45}     The NMTCA does not grant immunity from liability for federal civil rights actions, nor could it do so under the Supremacy Clause of the United States Constitution. *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land."). *See also Howlett v. Rose*, 496 U.S. 356, 375-76 (1990) (noting that state laws that attempt to provide for immunities "over and above those already provided in § 1983" are preempted); *Martinez v. California*, 444 U.S. 277, 284, n. 8 (1980) (noting that "[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law" because a "construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced" (internal quotation marks and citations omitted)). Government officials can be sued in their individual capacities for damages under Section 1983, *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991); and in their official capacity for injunctive relief, *Vann v. U.S. Dep't of Interior*, 701 F.3d 927, 929 (D.C. Cir. 2012).

30

{46} It follows, therefore, that the listed waivers, including Section 41-4-12, are only relevant when liability is sought for the torts listed therein.[3] But here, the suit Loya brought against Officer Gutierrez alleges violations of federally protected constitutional rights under Section 1983, and does not allege tort liability. *Loya*, 2014-NMCA-028, ¶ 8. Accordingly, the waiver exceptions under Section 41-4-4(A) would seem to have no bearing on the County's obligation to provide a defense when liability is sought against its employee for violation of federal constitutional rights.

{47} The same is true for the County's duty to indemnify Officer Gutierrez in the event of a judgment against him. The County must pay that judgment under the clear language of the NMTCA. *See* § 41-4-4(D) ("A governmental entity shall pay any settlement or any final judgment entered against a public employee for" (1) any tort or (2) violation of federal constitutional rights.). An award of punitive damages, which are not even authorized under the NMTCA, Section 41-4-19(D), must also be

---

[3]Section 41-4-12 is essentially a restatement of the provisions of the former Peace Officers Liability Act (POLA). *See* Ruth L. Kovnat, *Torts: Sovereign and Governmental Immunity in New Mexico*, 6 N.M. L. Rev. 249, 264 (1976). POLA was enacted in 1973 "to provide a permissive method whereby the state or a local public body may elect to protect peace officers from personal liability arising out of certain acts committed during the performance of their activities . . . and to compensate the individuals wrongfully harmed by these actions." 1973 N.M. Laws, ch. 194, § 2. POLA was repealed upon the enactment of the NMTCA. *See* Kovnat, *supra*, 255-64.

31

paid by the governmental entity/insurer under the NMTCA if sustained "under the substantive law of a jurisdiction other than New Mexico, including . . . the United States of America." Section 41-4-4(C). Here again, there appears to be no statutory link between the County's obligation to defend and indemnify a public employee and the separate question of whether the County can be held liable for one of the torts enumerated in the NMTCA for which sovereign immunity has been waived.

{48}     History supports our conclusion. The NMTCA, as originally enacted, only required a governmental entity to provide a defense when liability was alleged for torts committed by the employee. *See* 1976 N.M. Laws, ch. 58, § 3(C). Under the original statute, it is possible that the obligation of the governmental entity to provide a defense was dependent upon express waiver of liability because the statute only required the entity to provide a defense for tort actions. If the statute today read as it did in 1976, it might have been necessary for Officer Gutierrez to fit within one of the waiver exceptions in order to be provided with a defense. *See id.* ("When liability is alleged against any public employee for any torts alleged to have been committed within the scope of his duty, whether or not alleged to have been committed maliciously, fraudulently or without justifiable cause, the governmental entity shall provide a defense.")

32

{49} In 1977, however, the Legislature amended the statute and added a subsection to the defense provision to require a governmental entity to provide a defense when liability is sought for any violation of constitutional rights as well as for commission of the specific torts for which liability was waived in the Act. *See* 1977 N.M. Laws, ch. 386, § 3(C) ("When liability is alleged against any public employee for any torts alleged to have been committed within the scope of his duty, or for a violation of property rights or any rights, privileges or immunities secured by the constitution . . . the governmental entity shall provide a defense and pay any settlement or judgment."). Thus, the amendment expanded the duty to defend.

{50} It is clear from the added subsection, therefore, that there exists a clear right to defense against civil rights claims with no reference to assertion of waiver of immunity from those claims. *See* § 41-4-4(A). If the Legislature intended to condition the duty to provide a defense upon a finding that immunity is waived, it would not have amended the original statute to require an entity to provide a defense against civil rights violations without also asserting immunity for those same violations.

{51} All of this makes sound policy sense. If a police officer or other public employee can be sued under federal law for violation of federally-secured constitutional rights while acting within the scope of his or her duty, sound public

33

policy supports a county not abandoning its officer, but coming to the officer's assistance with a legal defense and indemnification if necessary. Therefore, showing waiver of tort liability is not required before a governmental entity is obligated to provide its employee with a defense in a Section 1983 action where there are no tort claims asserted.

**Officer Gutierrez Was Not Acting As an Independent Contractor**

{52} Because we determine that Officer Gutierrez otherwise meets the "public employee" definition, we now address the County's final argument that he is excluded as an independent contractor. *See* § 41-4-3(F) ("'[P]ublic employee' means an officer, employee or servant of a governmental entity, excluding independent contractors."). The district court determined that Officer Gutierrez failed to meet the definition of "public employee," so it did not reach this issue. The County argues that even if Officer Gutierrez is otherwise a "public employee" for purposes of the NMTCA, he was nonetheless acting as an "independent contractor" when he arrested, charged, and prosecuted Loya.

{53} We start by questioning, without deciding, whether a sheriff's deputy could ever "act" as an "independent contractor." The common law rule, undisturbed by New Mexico statute, has long established that a deputy acts on behalf of his sheriff. We are

34

unaware of any situation in which a sheriff has lawfully commissioned an individual to serve as a deputy without also controlling, or reserving control over, the manner and means by which that deputy exercises the authority conferred upon him by the sheriff. A functional law enforcement system requires accountability and uniformity among the officers. If a sheriff no longer had the duty to oversee the actions of sworn deputies, chaos or at least a lack of critical accountability would ensue. Rightfully so, the public would question such a rogue system of law enforcement. We have grave doubts whether our Legislature would tolerate such a system.

{54} That said, the County offers *Segura v. Colombe* to support its position that a sheriff's deputy can act as an independent contractor. 895 F. Supp. 2d 1141 (D.N.M. 2012). In that case, the federal district court determined that the County did not exercise sufficient control over the deputy's activities to render the relationship one of employer and employee and thus found that the officer was acting as an independent contractor. *Id.* at 1148-49.

{55} In reaching its determination, the *Segura* court applied the test announced by this Court in *Celaya*, 2004-NMSC-005, ¶ 15. *Segura*, 895 F. Supp. 2d at 1149. In *Celaya*, this Court held that a strict application of the right-to-control test may lead to inconsistencies when analyzing whether an individual is an independent contractor

for purposes of the NMTCA. We instead adopted the multi-factor analysis in Restatement (Second) of Agency, § 220(2)(a)-(j) (1958), which includes:

> 1) the type of occupation and whether it is usually performed without supervision; 2) the skill required for the occupation; 3) whether the employer supplies the instrumentalities or tools for the person doing the work; 4) the length of time the person is employed; 5) the method of payment, whether by time or job; 6) whether the work is part of the regular business of the employer; 7) whether the parties intended to create an employment relationship; and 8) whether the principal is engaged in business.

*Celaya*, 2004-NMSC-005, ¶ 15. The facts in *Celaya* involved a volunteer chaplain for the sheriff's department who was in an accident while driving a department vehicle. In that case, the right-to-control analysis alone could not resolve the issue of whether a volunteer chaplain was an independent contractor under the NMTCA. Thus, it was necessary to go beyond right to control to determine the relationship between the chaplain and the sheriff's department.

{56} No such further inquiry is necessary here. In the case of a sworn sheriff's deputy engaged in enforcing state law on behalf of the county, there is a clear right to control—indeed an obligation to control—the actions of a deputy. When that right to control is so fundamentally a part of the relationship, we find it unnecessary to analyze the relationship under the additional factors announced in *Celaya.*

36

{57} We note from our reading of *Segura* that, unlike the present case, the parties there presented very little evidentiary support for the proposition that the deputy was not an independent contractor. Beyond that difference, however, we find the federal court's reasoning unpersuasive for the reasons stated as a matter of sound legal policy.

**CONCLUSION**

{58} We hold that the County must provide Officer Gutierrez with a legal defense, including costs and attorney's fees in conformity with the NMTCA. We therefore reverse the entry of summary judgment in favor of the County and remand to the district court for further proceedings consistent with this ruling.

{59} **IT IS SO ORDERED.**


_____
**RICHARD C. BOSSON, Justice**


**WE CONCUR:**


_____
**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**


_____

**CHARLES W. DANIELS, Justice**


_____

**ABIGAIL P. ARAGÓN, Judge**
**Sitting by Designation**