McDONALD, Appellant,

v.

CITY OF DAYTON et al., Appellees.

[Cite as *McDonald v. Dayton*, 146 Ohio App.3d 598, 2001-Ohio-1825.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18721.

Decided Nov. 16, 2001.

600

Elaine S. Bernstein, for appellant.

J. Rita McNeil, Director of Law, John J. Danish and Stacey D. James, Assistant Law Director, for appellees.

GRADY, Judge.

{¶ 1} This is an appeal from summary judgments that the court of common pleas granted for the defendants on multiple claims for relief in an action brought by a police officer, Michael McDonald, after he was suspended from his position and subsequently discharged for misconduct. The principal issue on appeal is whether McDonald was denied his due process right to a hearing when his salary was discontinued without a hearing after he had previously been suspended with pay. The trial court held that a subsequent arbitration proceeding that ordered McDonald restored to his position satisfied the due process requirement. We do not agree. Therefore, the summary judgment rendered on the claim for relief in which the issue arises, which is a claim for violation of McDonald's civil rights, will be reversed, and the matter will be remanded for further proceedings on that claim for relief.

I

{¶ 2} Dayton Police Officer Michael McDonald was on duty during the evening hours of February 17, 1998. He went to a Wendy's restaurant to order his dinner. After placing his order and paying for it, McDonald and the order clerk got into a dispute over the amount of change she gave him, which McDonald claimed was too little. The dispute escalated and McDonald decided to arrest the clerk. When she refused to submit, McDonald used his pepper spray to disable her. These events were observed by other people at the restaurant.

{¶ 3} McDonald is white. The female employee is African American. McDonald's use of pepper spray produced considerable commotion and protest, both at the restaurant that night and during the ensuing weeks in the Dayton

community, where organized opposition was voiced to police conduct in general vis-a-vis race and with respect to McDonald's actions in particular.

{¶ 4}  McDonald's supervisor was called to the restaurant on the night of the incident and decided to send McDonald home.  The following day, February 18, 1998, McDonald was ordered to attend a "show cause hearing" concerning allegations of misconduct and any discipline that might be imposed.  On that same date McDonald was suspended from active duty with pay, conditioned on the positive results of a psychological examination he was ordered to undergo.

{¶ 5}  The report of McDonald's psychological examination indicated that he was fit for duty.  On February 25, 1998, McDonald was assigned to a clerical job in the Dayton Police Division.  However, McDonald was removed from that position and was again sent home on February 26, 1998.  His pay was continued during the ensuing suspension, however.

{¶ 6}  On March 18, 1998, one month after McDonald was first suspended with pay, criminal charges arising from the Wendy's incident were filed against him in Dayton Municipal Court.  McDonald was charged with four misdemeanors: assault, attempted assault, criminal trespassing, and disorderly conduct.  As a direct result of these charges, McDonald's salary was discontinued by the city of Dayton during his suspension.  The city conducted no form of hearing prior to its decision to discontinue McDonald's salary.

{¶ 7}  The criminal charges against McDonald were prosecuted on the city's behalf by a special prosecutor from another jurisdiction.  The case was heard by a visiting judge, who dismissed three of the charges against McDonald and acquitted him on the remaining charge in June 1998.

{¶ 8}  In July 1998, the Internal Affairs Division of the Dayton Police Department began an investigation of the Wendy's incident.  As a result of its investigation, Internal Affairs served charges and specifications on McDonald.  On July 21, 1998, Chief of Police Ronald Lowe conducted a predisciplinary hearing on the matter.  Chief Lowe terminated McDonald on July 24, 1998.

{¶ 9}  The Fraternal Order of Police, which is the organized labor bargaining agent for Dayton police officers, filed two grievances on McDonald's behalf.  Each grievance was submitted to an arbitrator pursuant to a collective bargaining agreement.  Regarding the first grievance, which contested McDonald's March 18, 1998 suspension without pay, the arbitrator found that McDonald's suspension without pay from March 18 through his termination on July 24, 1998, was improper and sustained the grievance.  The second grievance pertained to McDonald's July 24, 1998 termination.  The arbitrator found that McDonald should be reinstated effective July 15, 1999, but without back pay, subject to certain conditions.

{¶ 10} The city appealed the second arbitrator's decision to reinstate McDonald, arguing that the arbitrator had exceeded her powers. The court upheld the arbitrator's decision, and we later affirmed. See *Dayton v. F.O.P., Capt. John C. Post Lodge No. 44* (June 2, 2000), Montgomery App. No. 18158, 2000 WL 706829.

{¶ 11} McDonald filed the action underlying this appeal on July 21, 1999, alleging that the city, the Dayton Police Department, and Chief Lowe had deprived McDonald of his due process rights in violation of Section 1983, Title 42, U.S. Code. McDonald also alleged libel and slander by Chief Lowe, both individually and in his official capacity, and libel and slander by Rev. Raleigh Trammell, the president of the Southern Christian Leadership Council, both individually and in his official capacity, and reverse discrimination in violation of R.C. 4112.02 by the city and the Dayton Police Department. The trial court granted summary judgment to all defendants on all claims.

{¶ 12} McDonald appeals only the trial court's grant of summary judgment on the civil rights claims against the city and Chief Lowe. McDonald presents three assignments of error.

## FIRST ASSIGNMENT OF ERROR

{¶ 13} "The court erred in granting the motion for summary judgment on the due process claims because the predisciplinary hearing did not satisfy due process requirements in that the decision was predetermined prior to the beginning of the hearing."

{¶ 14} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 15} In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825. "Because a trial court's determination of summary judgment concerns a question of law, we apply the same standard as the trial court in our review of its disposition of the motion; in other words, our review is *de novo.*" *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 552, 671 N.E.2d 317.

{¶ 16} McDonald's due process violation claims undergird his claims for relief alleging a deprivation of his civil rights. In that regard, McDonald argues that because Chief Lowe had decided to terminate him before the July 21, 1998

hearing that resulted in his termination, McDonald was deprived of his rights of due process. Therefore, according to McDonald, the trial court erred when it granted summary judgment for the city and Chief Lowe on McDonald's civil rights claim for relief.

{¶ 17} Title 42, Section 1983, U.S.Code provides a remedy for violations of substantive rights created by the United States Constitution or federal statute and is limited to deprivations of those rights. *Brkic v. Cleveland* (1997), 124 Ohio App.3d 271, 706 N.E.2d 10. Section 1983 states:

{¶ 18} "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

{¶ 19} A plaintiff who commences a Section 1983 action must allege that some person has deprived him of a federal right and that the person acted under color of law. *Gomez v. Toledo* (1980), 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572. For the purposes of Section 1983, municipalities and other local government units may be found to have acted under color of law. *Monell v. New York City Dept. of Social Serv.* (1978), 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. However, a municipality may not be held liable on a Section 1983 claim under a theory of respondeat superior; rather, an execution of a government's policy or custom must inflict the injury for which the government as an entity is responsible under Section 1983. Id. Recovery from a municipality is limited to acts that the municipality has officially sanctioned or ordered. *Brkic,* supra.

{¶ 20} The Due Process Clause of the Fourteenth Amendment states that no state shall "deprive any person of life, liberty, or property without due process of law." A two-step analysis is used when considering a claim that due process rights were violated. First, a court must determine whether the claimant has a right or interest that is entitled to due process protection. Second, if the claimant was deprived of such a right or interest, the court must determine what process is due. *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494.

{¶ 21} Regarding the first question, whether McDonald possessed a Fourth Amendment property interest in continued employment with the city police department, property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that

support claims of entitlement to those benefits." *Leary v. Daeschner* (C.A.6, 2000), 228 F.3d 729, 741, quoting *Bd. of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548. A contract, such as a collective bargaining agreement, may create a property interest. Id.

{¶ 22} McDonald possessed a property interest in his employment as a police officer for the city of Dayton that arose from his position as a "classified" employee pursuant to R.C. 124.11. In addition, the collective bargaining agreement between the FOP and the city established his property right. Therefore, the first prong of the due process inquiry is satisfied with respect to and on the basis of his deprivation of a property interest or some right associated with it. Therefore, we next turn to the second prong of *Loudermill,* what process McDonald was due.

{¶ 23} Generally, when a plaintiff is deprived of a protected property interest, a predeprivation hearing of some sort is required to satisfy the dictates of due process. *Loudermill,* supra. The predeprivation process need not be elaborate, depending upon the importance of the interests at stake. Id. When determining the amount of process due, a balance must be struck between the private right in retaining the property interest, the governmental interest in swift removal of unsatisfactory employees and avoidance of administrative burdens, and the risk of an erroneous decision. Id.

{¶ 24} Here, a predeprivation hearing was held on July 21, 1998, before McDonald was terminated from his position on July 24. McDonald argues that the hearing was nevertheless insufficient to satisfy due process requirements because the decisionmaker, Chief Lowe, had determined prior to the hearing to terminate McDonald. In other words, McDonald argues that the July 21, 1998 predeprivation hearing was a sham.

{¶ 25} Though it confers only a limited "right of reply," a predeprivation hearing is designed " 'to invoke the employer's discretion,' his sense of fairness and mutual respect, his willingness to reconsider. It is not designed or well-adapted to uncover the employer's bias or corrupt motivation." *Duchesne v. Williams* (C.A.6, 1988), 849 F.2d 1004, 1008, quoting *Loudermill,* supra. In addition, predeprivation hearings do not require the kind of neutral and independent decisionmaker that independent, quasi-judicial appeals from the deprivation would require. Id.

{¶ 26} In *Wagner v. Memphis* (W.D.Tenn.1997), 971 F.Supp. 308, the district court found that it was clear from the evidence that the outcome of a police officer's predeprivation hearing was predetermined, regardless of the proof presented at the hearing. Therefore, the court found that the hearing failed to satisfy the concerns and goals of *Loudermill.*

{¶ 27} There was evidence that Chief Lowe had condemned and repudiated McDonald's use of pepper spray in the Wendy's incident. Also, there was evidence that Chief Lowe and the city were under considerable public pressure to avoid such conduct, which was alleged to arise from a racial bias and poor management. This evidence portrays the possibility of bias. However, it does not portray a resolve to terminate McDonald's employment that was so fixed and absolute as to render McDonald's hearing before Chief Lowe on July 21, 1998, a sham. *Wagner, supra.* Therefore, no genuine issue of material fact exists concerning whether McDonald's due process rights were violated in that respect.

{¶ 28} The first assignment of error is overruled.

## SECOND ASSIGNMENT OF ERROR

{¶ 29} "The court erred in finding that plaintiff's suspension without pay on March 18, 1998, was not a violation of his procedural due process rights."

{¶ 30} Focusing on a different grounds alleged in support of his civil rights claim for relief, the city's action discontinuing his salary during his previously imposed suspension after criminal charges were subsequently filed against him, McDonald argues that the city's failure to conduct a form of hearing required by *Loudermill*, supra, before it discontinued his salary violated his due process rights.

{¶ 31} The city responds that no predeprivation hearing was required before it discontinued McDonald's salary because he was then suspended from his position, and as his employer, the city was justified in discontinuing his salary until the criminal charges were resolved. The city argues that the show cause hearing held one month earlier on February 18, 1998, resulting in McDonald's suspension with pay, was all that was required when his salary was later discontinued during the suppression.

{¶ 32} The issue is not whether the city was justified in discontinuing McDonald's salary but whether the loss he suffered as a result was a deprivation of his property interests that required a hearing. McDonald had a property interest in his salary; he had been employed by the city as a police officer since 1986. Furthermore, the deprivation he suffered was not a product or feature of McDonald's earlier suspension with pay because the questions it presented concerning the criminal charges and the loss of pay involved were not embraced by the hearing that was held when he was suspended. Therefore, the prior February 18, 1998 hearing cannot serve to satisfy McDonald's due process rights to a hearing on the deprivation of his property interests in his salary that took place a month later on March 18, 1998.

{¶ 33}  The trial court, which essentially took the same position on the lack of a predeprivation hearing, found that McDonald's due process rights were nevertheless protected by procedures following his termination on July 24, 1998. Stated otherwise, the trial court found that the *measure* of process that McDonald was due with respect to the loss of his salary was afforded McDonald by those "post-deprivation" procedures.

{¶ 34}  As noted above, courts have traditionally balanced three factors to determine what process is constitutionally due: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." *Gilbert v. Homar* (1997), 520 U.S. 924, 932–933, 117 S.Ct. 1807, 138 L.Ed.2d 120, quoting *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18.

{¶ 35}  The amount of post-deprivation procedures available impacts the amount of predeprivation procedure required. *Leary,* supra.  In some cases, post-deprivation review may be sufficient and no predeprivation process is required. *Gilbert,* supra; Federal Deposit Ins. Corp. v. Mallen (1988), 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265; *Ramsey v. Whitley Cty. Bd. of Edn.* (C.A.6, 1988), 844 F.2d 1268.

{¶ 36}  In *FDIC,* supra, a bank president who was indicted on felony charges was suspended without a predeprivation hearing on the authority of a federal statute that authorized the FDIC to suspend an indicted official of a federally insured bank.  The court recognized that the governmental interest girding the statute was to protect the interests of depositors and maintain public confidence. See 486 U.S. at 240–241, 108 S.Ct. 1780, 100 L.Ed.2d 265.  The court noted that "an important governmental interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation."  Id. at 240, 108 S.Ct. 1780, 100 L.Ed.2d 265.  The court found that the independent grand jury determination of probable cause to believe that the bank president had committed a felony was sufficient to support the bank president's suspension before a suspension hearing was held.  See id. at 240–241, 108 S.Ct. 1780, 100 L.Ed.2d 265.  The court further emphasized that the post-deprivation hearing took place without undue delay.  See id. at 241–242, 108 S.Ct. 1780, 100 L.Ed.2d 265.

{¶ 37}  In *Gilbert,* supra, the Supreme Court built upon the *FDIC* precedent. There a university police officer was arrested and charged by state police with felony drug charges.  The university immediately suspended the officer without pay, and he brought a due process claim against the university for failure to

conduct a predeprivation hearing. The court found that an employee charged with a felony could be suspended without pay without a predeprivation hearing. See 520 U.S. at 933–934, 117 S.Ct. 1807, 138 L.Ed.2d 120. The court emphasized that temporary suspension without pay was not as severe as termination, and therefore less deserving of a predeprivation hearing, as long as the post-termination procedure was sufficiently prompt. See id. at 932, 117 S.Ct. 1807, 138 L.Ed.2d 120. The court noted that fringe benefits, such as health and life insurance, are often not affected by a suspension without pay. Id.

{¶ 38} Taken together, these cases present several variables that determine whether predeprivation process is necessary: (1) the nature of the interest deprived (the loss of employment versus some benefit that the employment offers); (2) the promptness of the post-deprivation hearing; (3) the public interest to be protected; and (4) the existence of objective corroboration of the alleged offense leading to the administrative action. *FDIC*, supra; *Gilbert*, supra. See, also, *Mathews*, supra. Applying these factors to the matter before us, we find that McDonald was denied a predeprivation hearing.

{¶ 39} First, the property interest McDonald lost when he was deprived of his pay was substantial. Although he was not terminated until July 24, 1998, a loss of pay for more than three months is substantial, even where fringe benefits continue. Therefore, we find that this factor weighs in McDonald's favor.

{¶ 40} Regarding the second factor, the promptness of the post-deprivation hearing, the trial court found that the labor arbitration procedure that McDonald invoked under the collective bargaining agreement between the FOP and the city amounted to effective post-deprivation relief. However, the requirements of procedural due process are not necessarily satisfied by a post-deprivation hearing of a public employee. *Ohio Assn. of Pub. School Emp., AFSCME, AFL–CIO v. Lakewood City School Dist. Bd. of Edn.* (1994), 68 Ohio St.3d 175, 624 N.E.2d 1043. An arbitration hearing may be sufficient to satisfy due process if the grieving party is provided "meaningful opportunity to challenge the adverse evidence." Id. at 179, 624 N.E.2d 1043. Nevertheless, the post-deprivation hearing must be sufficiently prompt. See *Gilbert*, supra; FDIC, supra.

{¶ 41} Here, the arbitration proceeding regarding McDonald's first grievance, his suspension without pay from March 18 through July 24, 1998, continued until March 12, 1999, almost a year after McDonald was suspended without pay. Therefore, even if the arbitration procedure amounted to a post-deprivation hearing, it was not sufficiently prompt.

{¶ 42} The city argues that any lack of promptness in the arbitration proceeding should not prevent it from meeting the requirements of due process because

McDonald himself created the delay when he sought arbitration through the FOP and its labor agreement with the city. McDonald's alternative was a civil service appeal, but there is no reason to believe that it would have been substantially more prompt. The argument, which apparently found favor in the trial court, misses the point, however.

{¶ 43} It was the city's burden and duty to offer McDonald a prompt post-deprivation hearing if no predeprivation hearing was held. It was not McDonald's burden to create that relief himself through the prosecution of his own claim. In any event, his options in that regard were open to him only after he was terminated from his position on July 24, 1998, more than four months after his salary had been discontinued during his suspension. That passage of time prevented the arbitration from being reasonably prompt in relation to the discontinuation of his salary on March 18, 1998, as well as the relatively simple and straightforward grounds on which the city relied to justify that discipline. Therefore, the lack of promptness prevents the arbitration from being a sufficient post-deprivation proceeding for purposes of due process.

{¶ 44} Regarding the third factor, the public interest involved, we find no compelling public interest that required altering McDonald's paid suspension to a suspension without pay. McDonald was not on duty when he was suspended without pay, having been sent home with pay on February 26, 1998. While the city might as a matter of policy not wish to pay someone whom it was prosecuting, the damage to the public interest in continuing a suspended employee's pay until the charges are resolved is negligible.[1]

{¶ 45} The city suggests that it was compelled by its own rules to discontinue McDonald's salary after the criminal charges were filed. The record does not support that claim. No rule or regulation of the city or its police department imposed such a requirement. Indeed, the arbitrator found that other Dayton police officers charged with misdemeanor criminal offenses have been suspended with pay, consistently. The fact that McDonald's alleged violations arose from performance of his official duties instead of from private conduct may present a difference but not one that permits the city to wholly dispense with the required hearing.

{¶ 46} Finally, McDonald also carries the fourth factor, the lack of objective corroboration of the alleged offense leading to the administrative action. The cause of the suspension was the filing of criminal charges, but the charges were founded on a criminal complaint filed by the city of Dayton, McDonald's employ-

---

1. We note that in a recent instance the city of Cincinnati continued the salary of an officer who was likewise charged with misdemeanor offenses, but which arose from a far more grave situation in which an arrestee was shot and killed, while those charges were pending.

er, not by an independent agency or in the form of an indictment by a grand jury. We find that the city's filing of misdemeanor charges against McDonald does not amount to the kind of objective determination that was found in *FDIC* and *Gilbert* to corroborate the actions taken.

{¶ 47} The distinction between the misdemeanor charges brought by the city in this case and felony charges in *Gilbert* and *FDIC* is significant, not because of the seriousness of the crime charged but because of the procedure used to bring the charges. In *Gilbert,* the employee was arrested pursuant to a probable cause determination and charged with a felony by the state police. In *FDIC,* a grand jury indicted the bank president. Here, the charges were brought by the city of Dayton, the same agency that imposed McDonald's suspension without pay as a result. See R.C. 1901.34(A). While a special prosecutor brought the charges on behalf of the city, it can hardly be said that this action amounts to an independent determination. See *Gilbert,* 520 U.S. at 924, 117 S.Ct. 1807, 138 L.Ed.2d 120.

{¶ 48} It may be that a predeprivation hearing would have had little effect in avoiding McDonald's suspension without pay on May 18, 1998. The criminal charges filed against McDonald, though they were brought by the same agency that suspended him, were nevertheless an objective fact the existence of which was beyond dispute. Applying the second prong of *Gilbert v. Homar,* supra, there was little if any "risk of an erroneous deprivation," at least to the extent that the deprivation turned on the fact that criminal charges had been filed. However, we believe that view both defines the issue too narrowly and imposes an unduly restrictive value on the hearing that McDonald was denied. He was entitled to that forum to invoke Chief Lowe's discretion, his sense of fairness and mutual respect, and his willingness to reconsider. *Loudermill,* supra. None of those considerations is avoided because the factual basis of a deprivation is undisputed. Indeed, the outcome of the subsequent criminal prosecution might indicate that a hearing could have been productive for McDonald. The lack of any precedent to impose that discipline may also have worked in McDonald's favor had a hearing been held.

{¶ 49} We find, for the reasons stated above, that reasonable minds could find that the city of Dayton violated rights afforded McDonald by the Due Process Clause of the Fourteenth Amendment when it failed to conduct a predeprivation hearing before it discontinued McDonald's pay during his continuing suspension on May 18, 1998. Subsequent proceedings before the arbitrator that resulted in back pay for this deprivation were not an effective substitute. *McDonald v. W. Branch* (1984), 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302. Therefore, the trial court erred when it granted summary judgment for the city on McDonald's civil rights claims for relief.

{¶ 50} The second assignment of error is sustained.

### THIRD ASSIGNMENT OF ERROR

{¶ 51}   "The court erred in finding that the city's failure to reinstate plaintiff immediately after the arbitration award, and placing him in the status of leave without pay, was not a violation of plaintiff's procedural due process rights."

{¶ 52}   McDonald argues that the city should have reinstated him on July 15, 1999, the date ordered by the second arbitrator.   Instead, the city sought judicial review in the court of common pleas, which upheld the arbitrator's decision.   The city then sought review of the trial court's decision by this court, and we too upheld the decision.   See *Dayton,* supra.

{¶ 53}   R.C. 2711.10 allows for an appeal of an arbitrator's decision on narrow grounds.   The city sought judicial review of the arbitrator's decision pursuant to R.C. 2711.10(D), which states that the court of common pleas may vacate an arbitration award if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."   Specifically, the city contested the arbitrator's decision that the level of discipline imposed upon McDonald was excessive.

{¶ 54}   Due process claims look not to the result that was reached but to the process that was followed, and whether that process denied the claimant some right to which he was entitled.   McDonald's right to reinstatement arising from the arbitrator's decision was a benefit that was subject to the right afforded the city of Dayton by R.C. 2711.10 to pursue an appeal.   The fact that the city's attack on the arbitrator's decision was unsuccessful does not demonstrate a due process violation.

{¶ 55}   The third assignment of error is overruled.

### Conclusion

{¶ 56}   Having sustained the second assignment of error, we will overrule the summary judgment of the trial court and remand this matter to the trial court for further proceedings consistent with this opinion.

Judgment accordingly.

FAIN, J., concurs.

BROGAN, J., concurs in part and dissents in part.

BROGAN, Judge, concurring in part and dissenting in part.

{¶ 57}   I concur in part and dissent in part from the majority opinion.   I agree with the city's position that the February 18, 1998 "show cause" hearing provided appellant with an adequate suspension hearing.   The fact that the city waited

until criminal charges were filed to suspend appellant without pay did not mean that appellant was not provided an adequate predeprivation hearing. The criminal charges involved the same events that prompted the "show cause" hearing.

{¶ 58}　In *Gilbert v. Homar,* the Supreme Court recognized that a police officer who was suspended had a significant private interest in the uninterrupted receipt of his paycheck. The court recognized on the other side of the balance that the state has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers. Justice Scalia wrote on behalf of the Supreme Court:

{¶ 59}　"Respondent contends that this interest in maintaining public confidence could have been accommodated by suspending him *with* pay until he had a hearing. We think, however, that the government does not have to give an employee charged with a felony a paid leave at taxpayer expense. If his services to the government are no longer useful once the felony charge has been filed, the Constitution does not require the government to bear the added expense of hiring a replacement while still paying him. ESU's interest in preserving public confidence in its police force is at least as significant as the State's interest in preserving the integrity of the sport of horse racing, see *Barry v. Barchi, supra* [443 U.S. 55] at 64 [99 S.Ct. 2642, 61 L.Ed.2d 365 (1979)], an interest we 'deemed sufficiently important . . . to justify a brief period of suspension prior to affording the suspended trainer a hearing,' *Mallen,* 486 U.S. at 241 [108 S.Ct. 1780, 100 L.Ed.2d 265]." (Emphasis and ellipsis sic.) 520 U.S. at 932–933, 117 S.Ct. 1807, 138 L.Ed.2d 120.

{¶ 60}　The Supreme Court noted in *Gilbert v. Homar* that the purpose of any presuspension hearing would be to assure that there are reasonable grounds to support the suspension without pay. The court noted that the reasonable grounds were assured by the arrest of the police officer and the filing of the criminal charges. 520 U.S. at 934, 117 S.Ct. 1807, 138 L.Ed.2d 120. Appellant was provided an adequately prompt post-suspension hearing after the criminal charges were resolved. I would overrule the appellant's second assignment of error and affirm the trial court's grant of summary judgment.

{¶ 61}　In all other respects I concur with the majority opinion.