[Cite as *Neal v. Treglia*, 2019-Ohio-3609.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY


JACK L. NEAL,

      PLAINTIFF-APPELLANT,               CASE NO. 1-18-70

      v.

MATTHEW B. TREGLIA, SHERIFF,         **O P I N I O N**
ET AL.,

      DEFENDANTS-APPELLEES.


**Appeal from Allen County Common Pleas Court**
**Trial Court No. CV 2017 0404**

**Judgment Affirmed**

**Date of Decision: September 9, 2019**


**APPEARANCES:**

    *William J. O'Malley* **for Appellant**

    *Angelica M. Jarmusz* **for Appellee, Matthew B. Treglia**

**ZIMMERMAN, P.J.**

{¶1} Plaintiff-appellant, Jack L. Neal ("Neal"), appeals the November 28, 2018 judgment entry of the Allen County Court of Common Pleas dismissing his complaint against defendant-appellee, Matthew B. Treglia ("Treglia"), Allen County Sheriff, and Dean McCombs ("McCombs"), special deputy for the Allen County Sheriff's Office ("ACSO") and Lima Memorial Hospital's ("LMH") security supervisor. For the reasons that follow, we affirm.

{¶2} This case stems from the March 20, 2017 termination of Neal's special-deputy appointment from the ACSO. Neal was appointed as a special deputy for the ACSO in 1987, where he volunteered with the Allen County Sheriff's Office's Mounted Posse Unit ("ACSOMPU").

{¶3} Under an agreement between the ACSO and LMH, the ACSO provided special deputies to serve as security officers at LMH's facility. Pertinent to the appeal, under that agreement Neal was employed at LMH as a security officer. However, on March 20, 2018, Treglia terminated Neal's special-deputy appointment (by letter) after Treglia discovered that Neal had violated an ACSO's policy relating to his appointment. After terminating Neal's appointment, Treglia

sent notice to Neal's security supervisor at LMH (McCombs).[1] Neal was terminated later from his employment at LMH on March 23, 2017.

**{¶4}** On July 10, 2017, Neal filed a complaint in the trial court against Treglia and McCombs, in their personal and professional capacities.[2] (Doc No. 1). Neal's complaint alleged claims for tortious interference with a business relationship and for deprivation of his rights under 42 U.S.C. 1983 (the "1983 claim") against both Treglia and McCombs. (*Id.*) Neal alleged an additional claim against McCombs for defamation. (*Id.*)

**{¶5}** Treglia filed an answer on August 10, 2017. (Doc. No. 4). On September 13, 2017, McCombs filed an answer, a cross-claim against Treglia, and a third-party complaint against the Allen County Board of Commissioners ("Commissioners"), Allen County Prosecutor, Juergen A. Waldick ("Waldick"), and the County Risk Sharing Authority ("CORSA"). (Doc. Nos. 8, 9).

**{¶6}** On September 29, 2017, CORSA filed an answer and counterclaim against McCombs. (Doc. No. 14). Treglia filed an answer on October 10, 2017 to McCombs's cross-claim, and the Commissioners and Waldick filed their answer to

---

[1] The notice of Neal's special-deputy appointment termination was copied to five individuals, including McCombs. (*See* McCombs Depo. at 81, Pl. Neal Ex. 2); (Neal Depo. at 23-25, 28-29, 32-33, Pl. Neal Ex. 2); (Treglia Depo. at 21, Pl. Neal's Ex. 3); (Doc. Nos. 35, 36, 37). Three of the five recipients of the notice are employed by the ACSO and are in supervisory roles over special deputies; two recipients of the notice are special deputies who had direct supervisory contact with Neal either through ACSOMPU or LMH (McCombs). Of those recipients, McCombs was the only recipient in privity with LMH.

[2] McCombs also serves as a special deputy for the ACSO, LMH's security manager, and was Neal's immediate supervisor.

McCombs's third-party complaint. (Doc. Nos. 15, 16). McCombs filed an answer to CORSA's counterclaim on October 19, 2017. (Doc. No. 17).

{¶7} On May 11, 2018, CORSA filed a motion for summary judgment as to McCombs's third-party complaint. (Doc. No. 39). McCombs filed a memorandum in opposition to CORSA's motion for summary judgment on June 4, 2018. (Doc. No. 48). CORSA filed a response to McCombs's memorandum in opposition to its motion for summary judgment on June 18, 2018. (Doc. No. 50). On June 26, 2018, the trial court denied CORSA's motion for summary judgment. (Doc. No. 53). CORSA, then, filed a motion for reconsideration of the order denying summary judgment on July 26, 2018. (Doc. No. 62). McCombs filed a memorandum in opposition to CORSA's reply motion for reconsideration. (Doc. Nos. 63, 64, 65). The trial court on August 28, 2018 denied CORSA's motion for reconsideration. (Doc. No. 66).

{¶8} McCombs filed a motion for summary judgment as to Neal's 1983, tortious-interference-with-a-business-relationship, and defamation claims. (Doc. No. 44). On May 14, 2018, the Commissioners, Treglia, and Waldick filed a motion for summary judgment as to Neal's claims and McCombs's cross-claims. (Doc. No. 45). On June 5, 2018, McCombs filed a memorandum in opposition to the summary-judgment motion filed by the Commissioners, Treglia, and Waldick. (Doc. No. 49). On June 19, 2018, the Commissioners, Treglia, and Waldick filed

their response to McCombs's memorandum in opposition to their motion for summary judgment. (Doc. No. 52). Neal filed a memorandum in opposition to Treglia's and McCombs's motion for summary judgment on June 28, 2018. (Doc. No. 54). McCombs and Treglia filed their responses on July 11, 2018 to Neal's memorandum in opposition to their motions for summary judgment. (Doc. Nos. 56, 57). On July 17, 2018, the trial court granted summary judgment in favor of McCombs as to Neal's 1983 claim, but denied McCombs's motion for summary judgment as to Neal's defamation and tortious-interference-with-a-business-relationship claims. (Doc. No. 58). The trial court also granted summary judgment in favor of Treglia as to Neal's 1983 and tortious-interference-with-a-business-relationship claims. (Doc. No. 59). Further, the trial court granted summary judgment as to McCombs's cross-claims against the Commissioners, Treglia, and Waldick. (*Id*.). On October 29, 2018, McCombs voluntarily dismissed his third-party complaint against CORSA. (*See* Doc. No. 68). On November 28, 2018, Neal and McCombs reached a settlement as to Neal's remaining claims against McCombs, and Neal dismissed his claims against McCombs. (Doc. No. 87).

{¶9} Neal filed his notice of appeal on December 19, 2018. (Doc. No. 88). He raises two assignments of error for our review, which we will address together, out of order.

## Assignment of Error No. II

**The Trial Court erred when it granted Summary Judgment to Defendant Treglia on the Plaintiff's claim under 42 U.S.C. §1983.**

## Assignment of Error No. I

**The Trial Court erred when it granted Summary Judgment to Defendant Treglia on the Plaintiff's claim of tortious interference with a business relationship.**

{¶10} In his assignments of error, Neal argues that the trial court erred by granting summary judgment in favor of Treglia. Specifically, and as it relates to his second assignment of error, Neal argues that there is a genuine issue of material fact as to his 1983 claim regarding whether Neal has a property interest or protected-liberty interest in his special-deputy appointment under the Due Process Clause as applied through the Fourteenth Amendment. In his first assignment of error, Neal argues that the trial court erred by granting summary judgment in favor of Treglia as to his tortious-interference-with-a-business-relationship claim because there is a genuine issue of material fact as to whether Neal and LMH had a business relationship and whether Treglia intentionally interfered with that relationship by notifying LMH of the termination of Neal's special-deputy appointment.

*Standard of Review*

{¶11} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist.

Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶12} "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

{¶13} Material facts are those facts "that might affect the outcome of the suit under the governing law." *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993) citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "Whether a genuine issue exists is answered by the following inquiry: Does the

evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Id.*, citing *Anderson* at 251-252.

**{¶14}** Summary judgment should be granted with caution, resolving all doubts in favor of the nonmoving party. *Perez v. Scripts-Howard Broadcasting Co.*, 35 Ohio St.3d 215, 217 (1988). "The purpose of summary judgment is not to try issues of fact, but is rather to determine whether triable issues of fact exist." *Lakota Loc. Schools Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 643 (6th Dist.1996). In ruling on a motion for summary judgment, a court is not permitted to weigh evidence or chose among reasonable inferences; rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the nonmoving party. *Buck v. Melco., Inc.*, 3d Dist. Paulding No. 11-09-06, 2009-Ohio-6872, ¶ 10, citing *Jacobs v. Racevskis*, 105 Ohio App.3d 1, 7 (2d Dist.1995).

*The 1983 Claim*

**{¶15}** First, we address Neal's argument that the trial court improperly granted summary judgment in favor of Treglia as to Neal's claims under 42 U.S.C. 1983. Neal argues that there is a genuine issue of material fact that he had a property interest in his special-deputy appointment. Further, Neal argues that there is a genuine issue of material fact that he was deprived of a constitutionally protected

liberty interest in his special-deputy appointment. Specifically, he contends that his reputation was damaged, and that he was "stigmatized" from his chosen profession, when Treglia notified LMH of the termination of Neal's special-deputy appointment. We disagree.

{¶16} The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property without due process of law." 42 U.S.C. 1983 provides a remedy to individuals when their federal rights have been violated by governmental officials. *Shirokey v. Marth*, 63 Ohio St.3d 113, 116 (1992), citing *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473 (1961), *overruled on other grounds*, *Monnell v. Dept. of Social Serv. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978). 42 U.S.C. 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * *, subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*See 1946 St. Clair Corp. v. Cleveland*, 49 Ohio St.3d 33, 34 (1990), citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662 (1986). "'Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.'" *Shirokey* at 116,

quoting *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir.1990). 42 U.S.C. 1983 is limited to deprivations of federal-statutory and constitutional rights and does not cover conduct that would amount only to a violation of state law. *Id*., citing *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir.1989), citing *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689 (1979). *See also Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756, 125 S.Ct. 2796 (2005), quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554 (1978), quoting *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2702 (1972) and citing *United States ex rel. TVA v. Powelson*, 319 U.S. 266, 279, 63 S.Ct. 1047 (1943).

> A two-step analysis is used when considering a claim that due process rights were violated. First, a court must determine whether the claimant has a right or interest that is entitled to due process protection. Second, if the claimant was deprived of such a right or interest, the court must determine what process is due.

*McDonald v. Dayton*, 146 Ohio App.3d 598, 2001-Ohio-1825, ¶ 20 (2d Dist.), citing *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487 (1985).

{¶17} Since Neal does not raise a substantive-due-process violation, we address only whether he was entitled to procedural-due process as to his claimed property interest. The procedural component of the Due Process Clause does not protect everything that may be considered as a benefit; rather, "an individual must have more than 'an abstract need or desire for it' or a 'unilateral expectation if it.'

He must, instead, 'have a legitimate claim of entitlement to it.'" *State ex rel. Trimble v. State Bd. of Cosmetology*, 50 Ohio St.2d 283, 285 (1977), quoting *Roth* at 577. "To establish a procedural due process violation, it must be shown that the conduct complained of deprived the plaintiff of a liberty or property interest without adequate procedural safeguards." *Roe v. Franklin Cty.*, 109 Ohio App.3d 772, 779 (10th Dist.1996), citing *Roth* at 569.

{¶18} "Such entitlements are * * * '"not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."'" *Town of Castle Rock*, 545 U.S. at 756, quoting *Paul v. Davis*, 424 U.S. 693, 709, 96 S.Ct. 1155 (1976), quoting *Roth* at 577. *See also Phillips v. Washington Legal Found.*, 524 U.S. 156, 164, 118 S.Ct. 1925 (1998). "'[T]he determination of the existence of a property right protected by due process is controlled by the statute creating and defining that right [or benefit].'" *Rodefer v. McCarthy*, 2d Dist. Darke No. 2015-CA-1, 2015-Ohio-3052, ¶ 51, quoting *Hamby v. Neel*, 368 F.3d 549, 558 (6th Cir.2004).

{¶19} Regarding the appeal before us, Ohio law does not provide for the appointment of a "special deputy sheriff"—only a "deputy sheriff" under R.C. 311.04.[3] Thus, "deputy sheriffs" derive their authority from the sheriff under R.C. 311.04. However, "reserve deput[ies]" existed under the common law and have

---

[3] There is only one place in the Ohio Revised Code in which the term "special deputy sheriff" appears and it is under R.C. 3599.38, which is titled "Illegally Influencing Voters While Performing Election Duties."

previously been recognized within Ohio law. *See State v. Glenn*, 11th Dist. Portage No. 1286, 1985 WL 7797, *5 (Feb. 5, 1985), citing 1965 Ohio Atty.Gen.Ops. No. 65-177, 1968 Ohio Atty.Gen.Ops. No. 68-112, 1977 Ohio Atty.Gen.Ops. No. 77-027, and *State ex rel. v. Geyer v. Griffin*, 80 Ohio App. 447, 453 (3d Dist.1946). Moreover, under Ohio law a "special deputy sheriff" is analogous to a "reserve deputy." *Id.*

> [T]he primary distinction between a "reserve" deputy and a "regular" deputy is that a "regular" deputy is generally considered a full-time, compensable, county employee who also receives all the emoluments of available fringe benefits. By contrast, a "reserve" deputy is essentially a volunteer for limited service sheriff assignments. Additionally, under Ohio common law, "reserve" or "special" deputies could be hired by private entities to provide police protection for special events or circumstances. The designations "reserve" and "special" deputies are used synonymously in Ohio. Reserve deputies often assume the same responsibilities and are required to complete the same extensive training course.

*Id.*, citing *State ex rel. Geyer* at 453, R.C. 109.71, and Ohio Adm. Code 109:2 et seq.

{¶20} In the case before us, Neal was not considered a full-time, compensable, ACSO employee ("regular deputy") who was receiving all the emoluments of available fringe benefits. *Compare id.*, citing *State ex rel. Geyer* at 453, R.C. 109.71, and Ohio Adm. Code 109:2 et seq. Rather, the record reflects that Neal was a *volunteer* for limited-service-sheriff assignments. (Neal Depo. at 8, 81); (Doc. No. 37). Compare *State ex rel. Geyer* at 453 (comparing regular deputies

and special deputies and distinguishing special deputies on the basis that they are volunteers hired for limited-service-sheriff assignments).

**{¶21}** Generally, volunteers do not have property interests in their positions, and thus are not afforded a constitutional right to procedural due process. *See Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir.1993) (concluding that a volunteer firefighter did not have a due process right to hearing on termination); *Hyland v. Wonder*, 117 F.3d 405, 412 (9th Cir.1997) (concluding that the plaintiff "fail[ed] to state a due process claim because he lacked a property interest in his position as a volunteer"); *Hale v. Bexar County, Tex.*, 5th Cir. No. 08-50820, 2009 WL 2222833, *6 (July 27, 2009) (concluding that "there is no constitutionally cognizable interest in a volunteer position"), citing *Versarge* at 1370. Accordingly, because Neal is a volunteer with the ACSO in his capacity as a special deputy for limited-service-sheriff assignments, he does not have a protected-property interest in that position. *See Brice v. Oregon*, 111 Ohio App.3d 7, 12 (6th Dist.1996) (concluding that a former, voluntary firefighter failed to establish a constitutionally protected property interest in his position); *Miller v. Watson*, D.Or. No. 3:18-cv-00562-SB, 2019 WL 1871011, *17 (Feb. 12, 2019) (concluding that no liberty or property interest existed to support a due process claim for a volunteer reserve officer). *See also Cleveland Constr., Inc. v. Cincinnati*, 118 Ohio St.3d 283, 2008-Ohio-2337, ¶ 6 (concluding that if a government official may grant or deny

the benefit in their discretion, the benefit is not a protected entitlement); *Town of Castle Rock, Colo.*, 545 U.S. at 756, citing *Kentucky Dept. of Corrs. v. Thompson*, 490 U.S. 454, 462-463, 109 S.Ct. 1904 (1989).

{¶22} Therefore, there is no genuine issue as to a material fact that Neal has a property-interest claim, which would entitle him to procedural due process.

{¶23} Next, we turn to address Neal's argument that there is a genuine issue of material fact that he has a protected-*liberty* interest in his reputation under his 1983 claim.

> While [the Supreme Court of the United States] has not attempted to define with exactness the liberty * * * guaranteed [by the Fourteenth Amendment], the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual * * * *to engage in any of the common occupations of life* * * * according to the dictates of his own conscience, and generally to enjoy those privileges long recognized * * * as essential to the orderly pursuit of happiness by free men.

(Emphasis added.) *Roth*, 408 U.S. at 572, quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923).

{¶24} To constitute the deprivation of a liberty interest when the injury occurs in connection with an employee's termination, there must be an injury to a person's reputation, good name, honor, or integrity. *State ex rel. Kilburn v. Guard*, 5 Ohio St.3d 21, 23 (1983). *See also Roth* at 573; *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir.1989).

**{¶25}** In order to establish a violation of a liberty interest in his reputation, actionable under a 1983 claim, Neal must show a *stigma* to his reputation, *plus* some attendant *infringemen*t of a protected right or interest or that a status recognized by Ohio law that has been altered. *See Long v. Dennerll*, 6th Dist. Wood No. WD-99-024, 2000 WL 678817, *3 (May 26, 2000). This is otherwise known as a "stigma-plus claim." *Id*.

> *Quinn* identified several factors that a plaintiff must show in order to establish that he was deprived of a liberty interest and entitled to a name-clearing hearing with respect to termination from employment: 1) the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment; a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance; 2) the stigmatizing statements or charges must be made public; 3) the plaintiff must claim that the charges made against him were false; and 4) the public dissemination of the information must have been voluntary. If these elements have been established, the plaintiff is entitled to a name-clearing hearing if he requests one.

*Hemphill v. Dayton*, 2d Dist. Montgomery No. 23782, 2011-Ohio-1613, ¶ 101, citing *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir.2002), citing *Brown v. City of Niota*, 214 F.3d 718, 722-723 (6th Cir.2000). *See also Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789 (1991), *overruled in part on other grounds*, *Pearson v. Callahan*, 550 U.S. 223, 129 S.Ct. 808 (2009); *Chilingirian* at 205-206; *Lake Michigan College Fed'n of Teachers v. Lake Michigan Community College*, 518 F.2d 1091, 1096-1097 (6th Cir.1975). "'A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does

not constitute a liberty deprivation.'" *Dennerll* at *6, quoting *Chilingirian* at 205-206, fn. 8.

**{¶26}** Here, Neal asserts that there is a genuine issue of material fact that his reputation was injured, resulting in the loss of future employment. That is, Neal argues that there is a genuine issue of material fact that he lost his employment (with LMH) and was stigmatized and damaged in his chosen profession by the notice sent by Treglia to LMH informing it of the termination of Neal's special-deputy appointment because it was based on "untrue" content. (Appellant's Brief at 21). Assuming, without deciding, that Neal is an ACSO employee for the purpose of addressing his liberty-interest claim (notwithstanding our conclusion he is an ACSO volunteer for limited-service-sheriff assignments for the property-interest claim), there is no genuine issue of material fact that Neal's reputation was not injured by the notice reflecting the termination of his special-deputy appointment, foreclosing him from future employment opportunities. *See Meyers v. Village of Oxford*, 739 Fed.Appx. 336, 340 (6th Cir.2018), citing *Mertik v. Blalock*, 983 F.2d 1353, 1358 (6th Cir.1993) (concluding that a non-governmental employee, an independent contractor, who held staff privileges at a city-owned ice rink, had a liberty interest in his reputation on the basis that there was a "mutually beneficial business relationship in which the governmental benefit, the right to use the city's rink,

played an integral role"). Specifically, the record contains *no* evidence reflecting that the notice Treglia sent to McCombs resulted in Neal's termination from LMH.

{¶27} Moreover, Neal failed to present any evidence to the trial court, as he is required to do by Civ.R. 56, reflecting that he has been foreclosed from *any* opportunities in his chosen profession after LMH terminated his employment. *See Carnes*, 2011-Ohio-4467, at ¶ 13, citing *Dresher*, 75 Ohio St.3d at 292-293 (1996), and Civ.R. 56(E). Indeed, in his affidavit in support of his memorandum in opposition to Treglia's motion for summary judgment, Neal extinguished any genuine issue of material fact that he was terminated from his position as a security guard with LMH based on the notice when he asserted that "[t]he only reason my employment at LMH ended was because Sheriff Treglia pulled my special deputy commission, and being a commissioned law enforcement officer is a requirement for a Security Officer at Lima Memorial Hospital." (Doc. No. 54).

{¶28} Further, Neal's memorandum in opposition fails to establish *any* genuine issue of material fact that he lost any other employment or was stigmatized and damaged because of the notice. In our review of the record, Neal failed to demonstrate that he was turned down for employment in the law-enforcement field or hospital-security field based on the special-deputy-appointment-termination letter. Rather all that is revealed is that, Neal was "too ashamed to apply" for employment. (Neal Depo. at 11); (Doc. No. 37). Ohio law contemplates something

more than a subjective perception of lost opportunities based on termination from employment, but rather, "a clear, immediate, and substantial impact" on Neal's reputation, which "effectively destroyed" his ability to work in law enforcement and related fields. *State ex rel. Trimble*, 50 Ohio St.2d at 287, citing *Tichon v. Harder*, 438 F.2d 1396, 1402 (2d Cir.1971) (concluding that "[a]lthough every dismissal for reasons other than reduction in the work force can be said to have some impact on future employability * * * in the absence of a clear, immediate and substantial impact on the employee's reputation which effectively destroys his ability to engage in his occupation, it cannot be said that a right of personal liberty is involved"). Thus, because Neal failed to establish a genuine issue of material fact that he was terminated from his employment with LMH, or was stigmatized and damaged from his chosen profession by the notice sent by Treglia reflecting the termination of his special-deputy appointment, Neal failed to establish a prima-facie case that he was entitled to a name-clearing hearing. *See Hemphill*, 2011-Ohio-1613, at 105.

{¶29} Therefore, there is no genuine issue of material fact that Neal was terminated from his employment with LMH, or stigmatized and damaged from his chosen profession, and thus, denied a constitutionally protected liberty interest.

{¶30} For these reasons, the trial court properly granted summary judgment in favor of Treglia as to Neal's 1983 claims.

*Tortious Interference with a Business Relationship*

**{¶31}** Next, we address Neal's argument that the trial court improperly granted summary judgment in favor of Treglia as to Neal's tortious-interference-with-a-business-relationship claim. The elements of tortious inference with a business relationship are: "(1) the existence of a prospective business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Gentile v. Turkoly*, 7th Dist. Mahoning No. 16 MA 0071, 2017-Ohio-1018, ¶ 23, citing *First-Knox Natl. Bank v. MSD Properties, Ltd.*, 5th Dist. Knox No. 15CA6, 2015-Ohio-4574, ¶ 19 (5th Dist.).

**{¶32}** In this case, to prove tortious interference with a business relationship, Neal must establish that: (1) a prospective business relationship existed between Neal and LMH; (2) Treglia had knowledge of that business relationship; (3) Treglia intentionally interfered with the relationship and that interference caused LMH to terminate its relationship with Neal; and (4) Neal was damaged as a result of that termination. *See Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 23 (3d Dist.), citing *Geo-Pro Serv., Inc. v. Solar Testing Laboratories, Inc.*, 145 Ohio App.3d 514, 525 (10th Dist.2001). *See also McNett v. Worthington*, 3d Dist. Van Wert No. 15-11-05, 2011-Ohio-5225, ¶ 18, citing *Lennon v. Cuyahoga Cty. Juvenile Court*, 8th Dist. Cuyahoga No.

86651, 2006-Ohio-2587, ¶ 19, citing *Costaras v. Dunnerstick*, 9th Dist. Lorain No. 04CA008453, 2004-Ohio-6266, ¶ 8.

{¶33} Because it is dispositive here, we need only address whether Treglia intentionally interfered with any relationship between Neal and LMH. In Ohio, special deputies serve at the pleasure of the sheriff. *See State ex rel. Geyer*, 80 Ohio App. at 455; *State v. Morris*, 1st Dist. Hamilton No. C-77716, 1978 WL 216570, *3 (July 26, 1978) (concluding that the "appointment of all deputies expires when the appointing Sheriff leaves office at the expiration of his term, because they are personal appointments extending only at the pleasure of and during the incumbency of the Sheriff"), citing *Geyer* at 447. As such, Treglia was free to terminate Neal's special-deputy appointment at any point and for any reason not contrary to law. *Id.*; *Id.* Indeed, as a special deputy with the ACSO, Treglia was Neal's appointing authority and his highest-level supervisor.

{¶34} Moreover, based upon our determination that Neal had no protected-property interest in his special-deputy appointment and our determination that Neal was not terminated as a result of the notice, Neal has not established that there is a genuine issue of material fact that Treglia *intentionally* interfered with any business relationship between Neal and LMH. That is, there is no genuine issue of material fact that the notice caused LMH to terminate its relationship with Neal. *See Semco, Inc. v. Sims Bros., Inc*. 3d Dist. Marion No. 9-12-13, 2013-Ohio-4109 ¶ 21, citing

*Hall v. Fairmont Homes, Inc.*, 105 Ohio App.3d 424, 436 (4th Dist.1995) ("Affidavits based on hearsay evidence are not admissible for the purposes of summary judgment"), citing *Pond v. Carey Corp.*, 34 Ohio App.3d 109, 111 (10th Dist.1986); *Pennisten v. Noel*, 4th Dist. Pike No. 01CA669, 2002 WL 254021, *2 (Feb. 8, 2002). Therefore, there is no genuine issue of material fact that Treglia *intentionally* interfered with Neal's business relationship with LMH.

{¶35} More specifically, Treglia terminated Neal's special-deputy appointment by letter on March 20, 2018. The loss of the special-deputy appointment rendered Neal unqualified for the security position at LMH. Accordingly, we conclude that there is no genuine issue of material fact that Treglia tortuously interfered with *any* business relationship between Neal and LMH. Thus, the trial court properly granted summary judgment in favor of Treglia as to Neal's tortious-interference-with-a-business-relationship claim.

{¶36} Accordingly, Neal's assignments of error are overruled.

{¶37} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW AND PRESTON, J.J., concur.**

**/jlr**